## ADAMS *v.* LANSING.

An instrument purporting to be a will executed by P., after reciting that he had already portioned out to his sons their respective lands, contains this clause: " I declare that these lands comprehend all my property of the Rancho de San Antonio, the title of whose concession and possession is in the hands of my son Ygnacio, and which lands I have already divided amongst my sons as a donation *inter vivos*, to their entire satisfaction, and which donation by these presents I do hereby ratify: " *Held*, that the heirs at law of P., and all persons claiming under them, are estopped by these recitals from denying that a title had passed to the sons in conformity therewith.

*Held*, further, that these recitals give title to the sons by way of *ratification* of the previous gift, and that the intention of the instrument was to vest the title immediately in the sons, and not to make a testamentary disposition of the lands.

*Held*, further, that it is immaterial whether the instrument is operative for testamentary purposes or not; that being executed with all the formalities required for the execution of a deed, it was admissible in evidence in behalf of defendant, who claimed title under it, without regard to its testamentary character.

The same instrument may operate both as a conveyance and as a will or devise in regard to different pieces of property.

APPEAL from the Fourth District.

Ejectment for a tract of land in Oakland, Alameda county. Both parties claim under Luis Peralta, grantee from the Mexican Government of the Rancho San Antonio, which embraces the land in dispute.

On the trial plaintiff proved that Luis Peralta was in his lifetime lawfully seized of the Rancho San Antonio; that he died in 1851, leaving him surviving four daughters and several grandchildren— children of a deceased daughter—whose interest, if any, plaintiff held by proper mesne conveyances; that defendant was in possession, claiming exclusive ownership; and that he had refused to let plaintiff into possession with him upon demand made. Upon this proof plaintiff rested.

The defendant then put in evidence three written admissions of the plaintiff, in the following language:

No. 1—" It is admitted that an original writing, of which the annexed is a copy, purporting to bear the signature of Luis Peralta, deceased, is now in the office of the Clerk of the Probate

41

Court of Santa Clara county, where it was lodged in the year 1851, by Ygnacio Peralta, for probate; that the name of Luis Peralta, subscribed thereto, is in his own genuine handwriting; and that said copy may be offered in evidence in lieu of the original, subject to all the exceptions which might be made to said original, and to be admitted in evidence as the original would be if produced in Court. The intention of this stipulation being to waive proof of the genuineness of the signature of Luis Peralta to said original, and to admit the use of said copy in like manner as said original might be used, if produced; but not to waive or admit any other matter or thing whatever. It is also admitted that the defendant acquired by mesne conveyances, in 1852, all the right of Vincente Peralta in and to the premises described in the complaint herein."

No. 2—" It is admitted by counsel for the respective parties, in the above entitled action, that Luis Peralta died in 1851, leaving him surviving four sons, to wit: Domingo, Vincente, Antonio Maria and Ygnacio."

No. 3—" It is admitted that, at the time of the death of Luis Peralta, and for some time before, his four sons occupied, in severalty, different portions of the San Antonio Rancho, and that Vincente occupied that part which embraces the land in question by living and grazing his cattle thereon."

Defendant then offered in evidence a paper purporting to be a copy of a record from the Probate Court of Santa Clara county of the probate of the writing mentioned in admission No. 1, to wit: the will of Luis Peralta—the will itself in Spanish, with a translation of the same, being in the copy of said record. Plaintiff objected on the ground, among others, that the will purported to have been admitted to probate at chambers and in vacation; that no petition for the probate thereof appears; that no time was appointed for the hearing, and no notices served; that it does not appear that the testator died in Santa Clara county, or left property there; and that neither the Probate Judge nor the Probate Court ever acquired jurisdiction to admit said will to probate. Objections overruled, and " the papers read in evidence," plaintiff excepting.

The paper so offered consists, first, of the alleged will of Peralta in Spanish, with a translation of the same; second, of an entry as follows:

" State of California, county of Santa Clara: This day the within, the last will and testament of Luis Peralta, which is hereunto annexed, was produced to me, J. W. Redman, *ex officio* Probate Judge of said county, and two of the subscribing witnesses, to wit: J. A. Forbes and John Arbili, and being by me duly sworn, saith that they were personally present, together with the other subscribing witnesses, and that the same was signed by the testator in their presence, and that the contents of said will were fully understood by said deceased, and that the said deceased was of sound and disposing mind, and of his accord executed the same.

" (Signed)                    JAMES ALEX. FORBES,
                                " F. JOHN ARBILI, S. J.

" Sworn and subscribed to before me this ninth day of September, 1851.

" (Signed)                        J. W. REDMAN,
                                "*Ex officio Probate Judge.*

" Done at chambers, the day and date above, at the county of Santa Clara.

" Therefore I, J. W. Redman, Probate Judge as aforesaid, do hereby admit said will to be probated and recorded as required by law, and that letters testamentary do issue accordingly, and that the Clerk take bond in the sum of $5,000 for the faithful performance of his duty as executor as named in said will.

" Done in chambers, at the county of Santa Clara and State of California, this ninth day of September, 1851.

" (Signed)       .                J. W. REDMAN,
                                "*Ex officio Probate Judge.*"

Third, of an entry as follows, to wit:

" In the matter of the estate of Luis Peralta, deceased, September 17th, 1851.   In vacation.

" Now, on this seventeenth day of September, 1851, comes Ygnacio Peralta, with the will of the deceased, Luis Peralta, and two of the subscribing witnesses, to wit: J. A. Forbes and John Arbili, and being sworn, saith   *   *   *   [then follows their statement, just as in the preceding entry].   It is therefore ordered by the Probate Judge that said will be and the same is hereby admitted to probate, filed and recorded, and that letters testamentary

issue to Ygnacio Peralta, which is now here done, and the said Ygnacio Peralta files bond in the sum of $5,000, with James A. Forbes and Peter Davidson as sureties."

Defendant rested; and plaintiff offered, by way of rebuttal, certain proceedings in the Probate Court of Santa Clara county, instituted in 1854—on the one hand for letters of administration on the estate of Luis Peralta, and on the other for a new probate of his will, on the theory that the probate in 1851, before mentioned, was null and void, which proceedings are still undetermined.

The translation of the will of Peralta is here given for future reference, involving as it does a large tract of land, about which much litigation is pending.

### TRANSLATION.

" In the name of the Most Holy Trinity, Father, Son and Holy Ghost, three distinct persons and one only true God, and in the presence of the Most Holy Virgin Mary, my lady; of the glorious Archangel St. Michael, St. Gabriel and St. Raphael, my guardian and protecting angel and of my devotion, I, Luis Peralta, being in the entire use of my mental faculties, although of an advanced age, and bearing in mind the uncertainty of this mortal life, I hereby make this my will in the best form, and declare it to be my last will and testament, and it is as follows:

In the first place, I command my sons to have my body buried in the neighboring Mission of Santa Clara, carrying it to the church, placing it upon the same hearse that is used for my fellow-men, the Indians, and that they, my sons, shall cause one low mass to be said of requiem, and afterwards, at the time of my burial, they shall cause to be said at the time as many responsaries as may be possible for the repose of my soul, for which they (my sons) shall pay alms, and afterwards proceed to the execution of this my last will as follows:

Firstly—I leave the house, my residence, in the town of San José Guadalupe, with the orchard of fruit trees, all the land which appertains to and belongs to said orchard, and all the rest of the land contiguous to the said house, together with the appurtenances of this property, in favor of my two daughters Maria Josefa Peralta

and Maria Guadalupe Peralta, in full ownership and dominion; and I encharge these daughters to remain always together in peace and union, enjoying this property mutually as absolute owners thereof.

Moreover, I declare particularly that everything that is in this house is my property, and as such, I leave it to my above mentioned daughters. The picture of St. Joseph and our lady Guadalupe being for my said daughter Guadalupe, and the Crucifix and our lady of Dolores for my daughter Maria Josefa. I command these two daughters to remain in peace enjoying the property that I leave therein; but if by marriage or other motive either one of them should wish to separate from the other, then the two may make such agreement as they shall deem fit for this and for any other arrangement of their domestic affairs, or of their property of which they remain the owners and mistresses without ever being disturbed by any person; and may they remain always together, the one serving the other as her guardian angel, that God our Lord may preserve them from the storms of this world, and from all ill-inclined persons.

As regards the cattle belonging to me, that is to say, horned cattle, I declare that on the marriage of my children Maria Teadora, Ygnacio, Domingo and Trinidad, to each one were given two cows and calves by reason of having just commenced the rearing of my cattle, but afterwards they received in gift more cattle, as they themselves can say, as they know how to speak the truth; also in the year 1831 there were delivered to William Castro two hundred and thirty head of horned cattle, which were the marriage portion of his wife Maria Louisa Peralta, my daughter. Also, I repeat again, that there have been given to my daughters Maria Teadora and Maria Trinidad two hundred head of horned cattle, and to my son Ygnacio three hundred head of cattle; and over and above those which have already been given to my son Domingo, I command that there be given to him one hundred head of cattle. I likewise command that out of the cattle in San Antonio and Temascal that shall be found to belong to me, there shall be given two hundred head to each one of my daughters Maria Josefa and Maria Guadalupe, and the remainder in Temascal shall belong to my son Vincente, and the remainder in San Antonio shall belong

to my son Antonio Maria; and these two brothers shall take the charge of the cattle of the two sisters Maria Josefa and Maria Guadalupe. Inasmuch, as I have already portioned out to my sons their respective lands, I declare that these lands comprehend all my property of the Rancho de San Antonio, the title of whose concession and possession are in the hands of my son Ygnacio, and which lands I have already divided amongst my sons as a " donation *inter vivos* " to their entire satisfaction, and which donations by these presents I hereby ratify.

I declare that I owe no man, and that Nazared Berreyeza owes me fifteen dollars.   I name as first executor of this my will my son Ygnacio Peralta, and my son Antonio Maria Peralta as second executor; that they, aided by the rest, may fulfill all that I have ordained.

Finally, I command all my children, that they remain in peace, succoring each other in your necessities, eschewing all avaricious ambition, without entering into foolish differences for one or two calves, for the cows bring them forth every year; and inasmuch as the land is narrow, it is indispensable that the cattle should become mixed up, for which reason I command my sons to be friendly and united.   Lastly, I command all my children, sons and daughters, to educate and bring up their children in the holy fear of God, showing them good example and keeping them from all bad company, in order that God our Lord may shower upon them his blessings, the same which I leave to you, in the name of the Father, and the Son and the Holy Ghost.

I declare that this is my last will and testament, dictated by me and written in my presence, read and signed by myself; and by these presents I revoke and annul all and every other will or wills, codicil or codicils, that I may have executed; I declare it or them null and of no value in law or otherwise.

In testimony whereof, I have hereunto placed my hand this twenty-ninth day of April, one thousand eight hundred and fifty-one, in the city of San José, and in the presence of witnesses that I have called to serve as witnesses of this my last will.

(Signed)                 LUIS MA PERALTA.   [SEAL.]

JAMES ALEX FORBES, ⎫
PADRE JUAN NOBILE, ⎬ Witnesses.
DOM'O DARUCO,        ⎭

Plaintiff then asked the following among other instructions, all of which were refused except the last, which was given :

1. " That the will of Luis Peralta is not proved according to the requirements of the Statute."

2. " That the paper purporting to be a certified copy of proceedings before Judge Redman, Probate Judge of Santa Clara county, to probate the will of Luis Peralta, does not prove the execution of the will ; nor the competence or the capacity to make a will ; nor that it was subscribed by the subscribing witnesses in the presence of the testator ; or that said Luis Peralta was dead."

3. " That the paper above mentioned furnishes no evidence of the due proof or probate of the will, in the absence of evidence giving the Judge or Court jurisdiction to adjudicate the probate of the will."

4. " That said will is not so proved as to make it any evidence in this Court."

5. That the will does not by its terms, or legal effect, devise the premises to Vincente Peralta.

The Court charged the jury as follows, plaintiff excepting :

1. That " the record of the will has been admitted in evidence by the Court, and the jury must receive it and regard it as effectual as evidence in this action as the original would be if produced and admitted in evidence."

2. " The proof of this will itself is sufficient to destroy the *prima facie* right of plaintiff.

Verdict for defendant ; judgment accordingly ; and plaintiff appeals.

*Williams, Patterson & Stow*, and *H. W. Carpentier*, for Appellant.

1. The alleged probate of the will of Luis Peralta was null and void.

2. Excluding said will and record of probate, defendant established title to only one undivided ninth, and plaintiff to the undivided five-ninths of the premises, which entitled the plaintiff to be let into possession.

3. No proof of the will was offered other than the record of probate; and proof of the will by subscribing witnesses was not admissible, because our system gives the Probate Court exclusive jurisdiction of the probate of wills, and makes its record, when in due form, conclusive. (*Tompkins* v. *Tompkins*, 1 Story C. C. 547; 1 Curtis C. C. 453; 1 Gallison, 622; 2 Curtis, 202; 1 Pick. 114, 547; 4 Id. 33; 2 Ala. 235; Act 1851, 21, 22, secs. 80, 81, 84; Id. 449, 451, secs. 4, 30–37; 18 Ala. 425; 16 Id. 581–591; 16 Id. 592; 4 Met. 492; Wood's Dig. 393, sec. 20; Id. 394, sec. 30 *et seq.;* 6 Cal. 161; Id. 625; 1 Jarman on Wills, 216 and cases; 4 Cranch, 434; 16 Mass. 441; 12 Met. 421; 2 Seld. 198; 7 Paige, 397; 4 Id. 625; 3 Barb. Ch. R. 481; 3 Binn 506; 5 Barr, 21; 9 Id. 234; 8 Id. 423; 23 Conn. 1; 2 Root, 303; 1 Day, 170; 3 Id. 318; 2 Mich. 231; 3 Ired. Eq. 242; 6 Gratt, 554; 1 Id. 77; 3 Id. 565; 3 Rand, 190; 3 A. J. M. 995; 1 B. Monroe, 391; 4 T. B. Monroe, 423; 13 Ill. 17; 8 Ind. 466; 8 Ohio, 5, 18; Id. 239; 12 Id. 253; 5 Eng. 174; 14 Ark. 678; 2 Story, 328; 27 Me. 17, 27; 8 N. H. 126; 4 Id. 409; 22 Vt. 58; 24 Id. 45; 9 Id. 41; 1 D. Chip, 420; 30 Miss. 419; 3 Cush. [Miss.] 514; 2 How. [Miss.] 806, 856; 3 Id. 252; 7 Id. 147; 5 La. 393; 2 Iowa, 178; 3 Mo. 507; 6 Id. 182; 23 Id. 397.)

4. Even if defendant had the right to the will as an original will or as a deed, it could not be proved except by full evidence, such as is required by statute to prove it in the Probate Court. (10 Paige, 85; 1 Denio, 33; 26 Wend. 331; 1 Barb. 527; 5 Cow. 221.) Proof of the signature of the testator would not be sufficient. The statute says : " No will shall be valid," unless executed with certain formalities ; and these formalities are matters of affirmative proof, not a particle of which was offered.

*E. W. F. Sloan*, for Respondent.

I.    The instrument signed by Luis Peralta took effect and operated as a deed of feoffment, release or confirmation, and not as a will, so far as the Rancho San Antonio is concerned.

The intention of the maker as to the character of the estate and as to the time when it is to take effect, wholly irrespective of the

form of the instrument, is to be looked to in determining whether it be a deed or a will. If the instrument is to have no effect until after the death of the maker, it can only operate as a will. If it is to take effect immediately, for any purpose, it may operate as a deed. (1 Williams on Executors, 87 ; 1 Jarman on Wills, 11–27 ; *Thorald* v. *Thorald*, 1 Phill. Ecc. R. 1 ; *Proctor* v. *Daines*, 3 Hagg, Ecc. R. 389 ; *Thompson* v. *Browne*, 3 M.. & K. 32 ; *Habergham* v. *Vincent*, 4 Bro. C. R. 381, 389 ; *Kinard* v. *Kinard*, 1 Speers Eq. 256 ; *Dawson* v. *Dawson*, 2 Strob. Eq. 34 ; S. C. Chevis Eq. 154 ; S. C. Rice Eq. 274 ; *Hester* v. *Young*, 2 Kelly, 31, 50 ; *Cummings* v. *Cummings*, 3 Id. 484 ; *Jackson* v. *Culpepper*, Id. 569 ; *Robinson* v. *Schly*, 6 Geo. 516, 529 ; *Stewart* v. *Stewart*, 5 Conn. 320 ; *Colden* v. *Cornell*, 3 Johns Cas. 174 ; *Scropshire* v. *Loudon*, 23 Miss. 396, 397 ; *Wall* v. *Wall*, 30 Id. 91.)

The same instrument may operate both as a conveyance and as a will or devise in regard to different pieces of property ; as to one it may pass a present immediate interest or title—taking effect as a deed of gift or feoffment ; whilst as to the other, it may operate by way of bequest—taking effect upon the death of the maker only. (*Robinson* v. *Schly*, 6 Geo. 516, 529.)

II. The act of livery, by which the four sons of Luis Peralta went into possession and received an investiture of their respective portions of the San Antonio Rancho, was equivalent to a feoffment at common law ; they thereby became seized, in fact, of an estate in fee simple. (4 Cruise Dig. 62 ; Lit. 32, ch. 4 sec. 33 (old ed.) ; 4 Kent, 482–484.) Hence they had an estate in the land upon which a release or confirmation could operate. (*Goodtitle* v. *Bailey*, Cowp. 597 ; 2 Coke Litt. (B. & H. Ed.) 274 *a*, 274 *b*, 296 *a*, 296 *b* ; 2 Greenl. Cruise Dig. 111, tit. 32, ch. 6, secs. 26, 27 ; Id. sec. 43, 44.)

III. The proof of execution and delivery is ample. It consists of the solemn admissions of the plaintiff, deliberately made, in writing, for the express purpose of being used as evidence on the trial of the cause. It was wholly unnecessary to call on the subscribing witnesses to testify to what was admitted to be true, or to produce the original, when that was expressly waived. (1 Greenl.

Ev. secs. 27, 186, 205, 572 ; 1 Camp. 70 ; 1 Mees. & W. 508 ; 7 Car. & P. 6 ; Greenl. Ev. secs. 27, 186, 205, 572 ; 4 Kent, 455 ; 9 Mass. 309 ; 12 Johns. 536 ; 2 Vern. 473 ; 1 Bro. P. C. 122 ; 5 B. & C. 687 ; 2 Mass. 447 ; 5 Conn. 319.)

IV.   Independent of the words of confirmation operating on the seizin in fact of the four sons, the recital contained in the instrument, to the effect that the Rancho of San Antonio had been disposed of to them by a gift *inter vivos*, estops Luis Peralta, his heirs or devisees to deny the gift or alienation.   (*Salter* v. *Kiddy*, 1 Show, 59 ; *Shelley* v. *Wright*, Wills, 9 ; *Goodtitle* v. *Bailey*, Cowp. 597 ; *Ford* v. *Gray*, 1 Salk. 285 ; *Lainson* v. *Tremer*, 1 A. & E. 792, [28 E. C. L. 367] ; *Bowman* v. *Taylor*, 2 Id. 287 ; [29 E. L. C. 148] ; 2 Peere, Wms. 432 ; 4 Pet. 83 ; 7 Conn. 220 ; 7 Conn. 220 ; 9 Paige, 659 ; 8 Cow. 575 ; 3 Johns. Cases, 174.)

V.   The instrument was admissible in evidence without any formal probate, even if held to be a testamentary paper as to some of the property therein mentioned.   (*Farder* v. *Wade*, 4 Bro. C. 476 ; *Williams* v. *Folger*, 1 Amb. 343 ; *Lake* v. *Canfield*, 3 Bro. C. 236 ; *Maxwell* v. *La Montague*, cited in 3 Atk. 546.)

*H. P. Irving*, also for Respondent.   No brief on file.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action of ejectment to recover five undivided ninths of a tract of land in the city of Oakland.   Both parties deraign title from Luis Peralta, deceased, to whom the land was originally granted by the Mexican Government.   The plaintiff claims under conveyances from certain of the heirs at law of Peralta, and the defendant under an instrument purporting to be a will executed by Peralta on the twenty-ninth of April, 1851.   This instrument, after reciting that he, Peralta, had already portioned out to his sons their respective lands, contains the following clause : " I declare that these lands comprehend all my property of the Rancho de San Antonio, the title of whose concession and possession is in the hands of my son Ygnacio, and which lands I have already divided among my sons as

a donation *inter vivos*, to their entire satisfaction, and which dona-tion by these presents I do hereby ratify." The grounds upon which the defendant bases his claim to a title are: *First*, an estoppel growing out of these recitals; and, *second*, the ratification contained in this clause. In our view, the title is perfect upon either ground.

The case of *Denn* v. *Cornell* (3 John. Ca. 174) is directly in point upon the question of estoppel. The action was ejectment, the plaintiff claiming, as in this case, under a conveyance from the heir at law, and the defendant under a will containing a clause in these words: "And whereas I have conveyed to my son Cadwallader my lands at Coldenham, and to my son David my lands in the township of Flushing, I give and devise all my remaining lands," etc. The suit was brought to recover the lands referred to as having been conveyed to David, whose title had been acquired by the defendant. "I consider," said the learned Judge who delivered the opinion of the court, "that the heir of the testator is estopped by the recital in the will, to deny that the premises were conveyed to David. It is an act of his ancestor, to whom he is a privy." After referring to a number of authorities, and particularly to the case of *Shelley* v. *Wright*, (Willes' R. 9) he proceeded as follows: "From these authorities the Court concluded, in that case, that the defend-ant was estopped by the recital in a bond of a particular fact, from denying that fact. In the present case, the will contains a recital of a particular fact, viz: that he had conveyed the premises in question to David. By this recital the lessor of the plaintiff is estopped, as heir to the testator, from denying that the testator conveyed the premises to his son David."

It is impossible to distinguish that case, in any of its material features, from the case at bar. Here the recitals are also of par-ticular facts, and there is no doubt that the two cases stand sub-stantially upon the same footing. The difference between them is merely verbal, and there is not a plausible reason in favor of an estoppel in the case cited which does not apply with equal force in this. In that case the will recited the fact of a conveyance, and the difference is that in this it recites an apportionment and donation. If the word conveyance had been used instead of donation, the analogy would be complete, and we think the effect is the same, not-

withstanding this difference in the use of terms. Nothing could have been meant by a donation but a gift in accordance with the apportionment, and the necessary intendment is that this gift had been consummated in such a manner as to render it legal and valid. This is undoubtedly the proper construction, and our opinion is that the heirs at law, and all persons claiming under them, are estopped from denying that a title had passed in conformity with the recitals in the will. In this view of the case, it is immaterial whether the instrument, although it purports to be a will, is operative for testamentary purposes or not. It is executed with all the formalities required in the execution of a deed, and it was admissible in evidence without regard to its testamentary character.

Upon the question of ratification we entertain the same opinion of the merits of the controversy, but it is unnecessary to dwell upon this point. The language used was equivalent to saying, I have given these lands in certain proportions to my sons, and I hereby confirm and ratify the gift. There is no doubt that this was sufficient to pass the title, and it is clear that a testamentary disposition was not contemplated. The intention was to vest the title immediately in the sons, and it is of no consequence that the instrument professes on its face to be a will. The same instrument may operate both as a conveyance and as a will or devise, in regard to different pieces of property. (*Robinson* v. *Schly*, 6 Georgia, 515.)

Judgment affirmed.

*H. W. Carpentier*, *Wm. H. Patterson* and *A. A. Cohen*, on behalf of appellant, filed separate petitions for rehearing, mainly to the point that the record shows that the will of Peralta was not admitted in evidence, and that this Court erred in passing upon the construction of the will; counsel insisting that the will was offered and admitted in the Court below as a regularly probated instrument, and not as an original deed or instrument; that consequently their objections were to it as a probate record, and that if it had been offered as a deed of confirmation of a previous gift, appellant would have met it by proof, *first*, that Peralta was *non cómpos mentis* at its execution, and, *second*, that its "*donatio inter vivos*" was upon conditions which had been broken by the donees.

Adams *v.* Lansing.

On this petition, COPE, J., delivered the opinion of the Court—FIELD, C. J., concurring.

We see no ground upon which to grant a rehearing in this case. There is no foundation in the record for the position that the will of Peralta was not admitted in evidence. The only question raised by the appellant in the Court below seems to have been in regard to its admissibility as a probated instrument. In our view of the case, that question was entirely irrelevant, and the character of the instrument for testamentary purposes is immaterial. The only matters that we regard as properly before us were passed upon in our previous opinion, and we have no doubt of the correctness of the conclusion arrived at. The suggestions of counsel in reference to the validity of the instrument may all be true, but they have lost the opportunity to show that fact in the present case.

Rehearing denied.