## MATHEWSON v. FITCH.

THE defendant, by a written contract, agreed to pay the assignors of the plaintiff five hundred dollars whenever they should secure a final decree of the Supreme Court in any of the cases now pending, or hereafter instituted, in which the " Sisters " (referring to the daughters of one Peralta, deceased), claim adversely to the title under the will (of Peralta), which shall declare the said sisters' title null, and that the title of the " Peralta Sons is the only valid title under the will." An ejectment case was then pending on appeal, in the Supreme Court, for a portion of the land devised by Peralta, in which the plaintiff's assignors, acting as attorneys, procured a decision that the plaintiff therein, who claimed under the " Sisters," had no title, and that the defendant therein, who claimed through the sons, *under the will,* had a title which was valid : *held*, that this decision was a compliance with the condition of the agreement, and entitled plaintiff to recover the five hundred dollars.

If A promises B to pay him a sum of money if he will do a particular act, and B

Mathewson *v.* Fitch.

does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act.

Where a complaint avers that plaintiff did certain work in consideration of a promise by the defendant, an answer denying that plaintiff did the work, but not claiming that it was done upon any other consideration than the promise, raises no issue, except as to the performance of the work, and requires no proof from plaintiff as to the consideration upon which it was performed.

The offense of Maintenance is unknown to the laws of this State.

APPEAL from the Third Judicial District.

The complaint in this case sets forth in substance:

That there had been a judgment rendered in the District Court of the Fourth Judicial District, in favor of the defendant, in an action of ejectment wherein one Adams was plaintiff, and one Lansing defendant. That the plaintiff, Adams, in that action, claimed the exclusive title of the land sought to be recovered therein, through and under the will of Luis Peralta. That by said will the premises then in controversy, as well as the whole Rancho of San Antonio, of which said premises were a part, were devised to the four sons of said Luis, from and under whom defendant therein derived his title. That the plaintiff, Adams, in that case claimed to derive his title from the daughters of Peralta, alleging that the " will" was invalid, and that the rancho descended in equal proportions to all the sons and daughters of Peralta in common, and that he, Adams, was therefore entitled to recover a portion of the premises sued for.

That on the trial of the action in the said District Court judgment was rendered in favor of defendant, Adams, thereby confirming the " will" as valid, and thus, in effect, deciding that by it the four sons had a valid title to the San Antonio Rancho, and that the daughters, their " sisters," had no title whatever thereto.

That an appeal had been taken from said judgment, and said appeal being then pending and undetermined in the Supreme Court of the State of California, the defendant Fitch, on the fifth day of February, 1861, made and delivered to E. W. F. Sloan and D. P. & A. Barstow (who were attorneys for defendant in case of *Adams* v. *Lansing*), an agreement in writing, in the words and figures following, viz.:

" Memorandum of an agreement between C. L. Fitch, first part, and E. W. F. Sloan and D. P. and A. Barstow :

I, the undersigned, do hereby agree to pay to E. W. F. Sloan and D. P. and A. Barstow the sum of five hundred dollars on demand after the said Sloan and Barstow shall (as attorneys) have secured a final decree of the Supreme Court in any of the cases now pending, or hereafter instituted, in which the " sisters " claim adversely to the title under the " will "—which shall declare the said sisters' title null, and that the title of the " Peralta Sons " is the only valid title under the " will." Provided, such decision of the Supreme Court be obtained by and through the efforts (as attorneys) of said Sloan and Barstows on or before the first day of January, 1862.

Encinal San Antonio, February 5th, 1861.

CHAS. L. FITCH."

The complaint then avers that said Sloan and Barstows did well and faithfully perform the legal services aforesaid, mentioned in said agreement, and did, on the seventh day of May, 1861, by their legal services as attorneys, secure a final decree and decision of said Supreme Court, in said case of *Adams* v. *Lansing*, etc., which declares that the title derived under said " will," by his said sons, was the only valid title to said rancho, and that the adverse claim thereto, of the said " sisters," was null and void.

The complaint further avers that on June 29th, 1861, payment of said sum of five hundred dollars was demanded of said Fitch, and refused by him, and that the said contract was afterwards, and before this action was commenced, assigned to plaintiff, and demands judgment for said five hundred dollars and interest.

The defendants answered, denying that on the seventh day of May, 1861, or at any other time, the said Sloan and Barstows, by their legal services, or otherwise, secured in said Supreme Court a final decree or decision in said case of *Adams* v. *Lansing*, which declared that the title derived under said will by his said sons was the only valid title to said rancho, and that the adverse claim thereto of said " sisters " was null and void. Upon this issue the cause was tried by the Court.

The only evidence given upon the trial was the report of the case

of *Adams* v. *Lansing*, as contained in 17 Cal. 624, which report is, by stipulation, made a part of the record.   Upon this evidence the Court made its findings, and rendered its judgment for the amount claimed in favor of the plaintiff.   Defendant moved for a new trial, which was denied, and from this order and the judgment he appeals.

*A. M. Crane*, for Appellant.

I.   The contract upon which the suit is predicated is void for maintenance.

Fitch, the defendant, hires three attorneys-at-law (Sloan and the two Barstows) to prosecute an appeal in the Supreme Court, pending between Adams and Lansing, and agrees to pay them five hundred dollars if, within the time limited, they obtain a certain kind of decree or decision.

With this case, so far as shown by the complaint, Fitch has no sort of connection whatever, either by relationship to either of the parties, or by being interested in the title involved.

We have, it is true, no statute against maintenance, but it was an offense at the common law, and the contract set forth in the complaint is *prima facie* so clearly void, for the cause alleged, that I do not deem it necessary to dwell upon the point further than to refer the Court to the following authorities :

(Wharton's Law Dic. title Maintenance, 603 ; *Thalheimer* v. *Brinkerhoff*, 3 Cow. 623, and cases there cited.)

II.   The contract, or writing, set forth and signed by Fitch alone is void for want of mutuality.

Fitch undertakes, or agrees, to pay Sloan and the Barstows five hundred dollars upon their performing certain services, and obtaining a specified decision, but the Barstows and Sloan do not in any manner obligate themselves to do the services.

Fitch could have sustained no action against them for not performing the services specified.

The case of *Tucker* v. *Woods* (12 Johns. 190) is in point, and to that case and the authorities there cited, viz : *Cook* v. *Oxley* (3 Tenn. 653) ; 12 Ind. 397 ; 1 Chitty, 297 ; 1 Carries, 594 ; *Tuttle* v. *Love*  (7 Ind. 470)—the Court is referred.

7

The principle sustained in all these cases, as well as in the elementary works on the law of contracts, is this: That in contracts where the promise of one party is the consideration for the promise of the other, the promises must be concurrent and obligatory on both at the same time. Such, most clearly, was not the case here; as conclusive upon this point see *Utica & Schenectady R. R. Co.* v. *Brinkerhoff* (21 Wend. 139).

III.    The contract or writing set forth has no consideration to support it.

It does not appear by it, or by any averment in the complaint, how or in what manner its performance could in any way benefit the defendant, Fitch, or how or in what manner it could inconvenience the Barstows or Sloan. It may be said that Sloan and the Barstows were to perform services as attorneys in the case named, and that this was a sufficient consideration. But we learn from the complaint itself, as well as from the reported case of *Adams* v. *Lansing*, that they were, before said writing was made by Fitch, already the attorneys in the case, engaged in defending the appeal. Such being their position—being already retained by Lansing in the case—it was their duty to use all the skill and ability they possessed in the case under the retainer and employment of their client, and consequently they had no commodity of that sort left to dispose of to Fitch. Or, in other words, they could not possibly make any effort, or put forth any ability in consequence of the bargain with Fitch, which they were not already bound to exercise, and it is presumed would have exercised under their retainer by Lansing.

IV.    No such decree or decision has been obtained from or rendered by the Supreme Court as was to be obtained or rendered as a condition precedent to the payment of the five hundred dollars by Fitch. The complaint alleges that they did, in said case of *Adams* v. *Lansing*, obtain a decision which declares that the title derived under the will was the only valid title to the said ranch (*i. e.* the Peralta Ranch) and that the claim adverse to the said will thereto was void. This allegation of the complaint is specifically denied by the answer. The plaintiff then, to sustain his case, upon this issue produces and reads in evidence the report of the

case of *Adams* v. *Lansing* (17 Cal. 629) and this is all the evidence given.

Does this case prove that the title under the will is the only valid title to the Peralta Ranch ? Was any such question ever made or passed upon by the Court ? Was the validity of the will ever drawn in question ? And much more, was the validity of any other title—much more—all other titles ever passed upon by the Court ? The undertaking was to procure a decision declaring that the title acquired under the will was the only valid title to the rancho named. But nothing of this kind is decided in *Adams* v. *Lansing*, as we read the case. It was an ejectment for five-ninths of a town lot in Oakland, which lot was a part of the Peralta Ranch.

The will, so called, was produced by the defendant in order to show a conveyance by Luis Peralta to his sons, and thus determine that the sisters, under whom Adams claimed, had no title. The only question passed upon by the Court, or decided, was as to the construction of this paper, conveyance, or will. Admitting it to be genuine and valid, the Court holds that its effect was to convey the land to the sons. And this is all the case decides.

Suppose that on another trial, involving another portion of the ranch, it should be clearly shown and found by the Court or jury that Luis Peralta was, at the time of executing this paper, *non compos mentis;* what, then, becomes of the title under it ? Or suppose it shown that its execution was obtained by fraud— what then ? Could the decision in *Adams* v. *Lansing* be appealed to as a final decree or decision fixing forever the validity of the sons' title under it ? And yet this is what the writing signed by Fitch stipulates for, and what the plaintiff is bound to prove has been done under the issue made by the complaint and the answer.

When the plaintiffs have proved, as they are bound to do, that the title under this will is not only valid, but is the " only valid title " to the ranch, and shall have obtained a decision of this Court to that effect, they will have sustained the issue on their part and not until then.

*E. W. F. Sloan*, for Respondent.

I.   A contract should be so construed *ut res magis valeat quam*

*pereat*. This rule particularly applies where the consideration of the contract is executory as in the case at bar. (*Cobbs* v. *Fountaine*, 3 Rand. 487.)

It is not denied that *Adams* v. *Lansing* was, at the date of the contract, pending on appeal in the Supreme Court, or that it was one of the cases referred to in it. The subject matter in litigation was a lot of land, being part of the San Antonio Ranch originally belonging to Luis Peralta, deceased. Adams asserted title to an undivided interest to said lot through certain mesne conveyances from the daughters of said Luis Peralta. Lansing claimed title to the whole under the sons. The case depended on the question whether the sons had become vested with a title to the whole ranch under the instrument called a "will," or whether it vested in all the children by descent. By reference to the report of the case, which is made evidence, it will appear that the question was decided in favor of the sons.

It is true that was not a proceeding *in rem*, in which the execution of the instrument, as a matter of fact, was or could be proved for all purposes. It was known not to be so. The instrument was not susceptible of such proof so far as it related to the San Antonio Ranch. But its legal character received a settled construction. Nothing else could have been contemplated by the contract.

It may be doubted whether a particular deed contains words sufficient to pass an estate in land. But it is read in evidence, spread on the record, and comes up for judicial determination. A decision that the words are sufficient is a final settlement of the question in all cases where it arises, although the execution of the deed must be proved in all cases where it is offered in evidence.

II. The agreement does not present a case of concurrent consideration depending upon mutual promises. It is an undertaking to pay so much on condition that the attorneys would successfully perform the legal services mentioned. The performance was an acceptance on their part. The plaintiff alleged and proved the performance, and thus established a cause of action. (*Poughkeepsie and Salt Point P. R. Co.* v. *Griffin*, 21 Barb. N. Y. 454; Chit. on Cont. 63; *Cobbs* v. *Fountaine*, 3 Rand. 487.)

III. A continuing consideration, being one in part executed

and in part to be executed, is a sufficient consideration. (*Loomis* v. *Newhall*, 15 Pick. 159; *Wiggins* v. *Keiser*, 6 Ind. 258.) The material allegation in the complaint is, that in consideration of the making and delivery of the contract the legal services were performed.

IV. The contract is a lawful one. (*Thallheimer* v. *Brinkerhoff*, 3 Cow. 647; *Perine* v. *Dunn*, 3 Johns. Ch. 518, 519; *Benedict* v. *Stuart*, 23 Barb. 420; *Ogden* v. *Des Arts*, 4 Duer, 275; *Wright* v. *Meek*, 3 Iowa, 472.)

NORTON, J. delivered the opinion of the Court—COPE, C. J. concurring.

The obtaining the judgment which was rendered in the case of *Adams* v. *Lansing* (17 Cal. 629) was a performance of the condition upon which the defendant's promise to pay the five hundred dollars depended. It may be readily imagined that the defendant supposed the decree which was to be obtained would forever settle the title of the parties claiming under the "will," but that is not the thing specified in the written promise. That only requires that the decree in some case then pending, or thereafter to be instituted, should declare the sisters' title to be void, and the sons' title to be the only valid title under the "will." The Supreme Court in that case rendered a judgment that the plaintiff who claimed under the sisters had no title upon which he could recover, and that the defendant who claimed through the sons under the "will" had a title which entitled him to recover. This was, in effect and substance, a decree in that case that the sisters' title was null and void, and that the title of the sons under the "will" was the only valid title.

The promise was not a contract depending upon a mutual promise for a consideration. The doing of the thing specified constituted the consideration which made the promise binding. In the case of *Train* v. *Gold* (5 Pick. 380) the Court state the rule in these words: "Thus, if A promises B to pay him a sum of money if he will do a particular act, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act. In the intermediate time the obligation of

the contract or promise is suspended; for, until the performance of the condition of the promise there is no consideration, and the promise is *nudum pactum;* but on the performance of the condition of the promise, it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory." To the same, effect is the case of *Lousdale* v. *Brown* (4 Wash. 148).

The argument that the promisees have done nothing in consequence of the promise, because they were already retained in the action by other parties, and were under obligation to render these services, is not valid. The complaint avers that the work was done in consideration of the promise. The answer denies only the doing of the work, and does not claim that it was done for any other person or for any other consideration. When the doing of the work was proved, the cause of action set forth in the complaint was proved under the issue presented by the answer.

Nor is the contract void as being contrary to the policy of any law of this State in regard to maintenance. That offense was created by statute in England in early times, in order to prevent great and powerful persons from enlisting in behalf of one party in a lawsuit, by which the opposite and feeble party would be oppressed and prevented from obtaining justice. It has been said by English Judges that under the enlightened and impartial administration of justice in later times the object of the law had ceased and the law itself had become nearly obsolete. It has been said in America that the law against maintenance was peculiar to early English society, and inapplicable to American society, and, therefore, that it would not exist here unless by statute enacted here. At an early day in the history of the State of New York a statute was enacted against maintenance. At the revision of the laws of that State in 1830, the revisors, in a report to the Legislature, say: "It is proposed to abolish the law of maintenance and to qualify that of champerty, by permitting mortgages of lands in dispute to raise money, under guards and restrictions which will prevent abuse," and the mode adopted to "abolish the law of maintenance" was simply to omit enacting any statute upon the subject and repealing the old statute by which it was created or adopted. There was no special repeal of this old statute, but it was included in the general

repealing act, nor was there any law directly abolishing the offense of maintenance. Under these circumstances Judge Paige, in the case of *Hoyt* v. *Thompson* (1 Selden, 347) said : "Since the adoption of the revised statutes, maintenance has not, under our laws, been recognized as an offense, and champerty only remains an offense in a qualified form." Chancellor Walworth, in the case of *Mott* v. *Small* (22 Wend. 405) said : "I am prepared to say that all the absurd doctrines of maintenance that grew out of the statutes which might have been necessary in a semi-barbarous age were swept away by the recent revision of the laws, and many of them had been virtually abrogated long before that time." Chancellor Sanford, in the case of *Thellheimer* v. *Brinkerhoff* (3 Cowen, 647) said : "In many States of this Union these laws are not in force, and the want of them is said to be no inconvenience." These remarks show that, in the opinion of these Judges, in the absence of a statute creating it, the offense of maintenance does not exist in America as a part of the common law. There is no statute upon the subject in this State, and we have no doubt that the Legislature of 1850, when it adopted the statutes which were deemed necessary to organize the legal system of the State, by omitting to enact any such statute, acted in the spirit of the decisions which hold such laws inapplicable to this country, and with the direct purpose that there should be no law relating to the subject. In our judgment, in the absence of such a statute, the offense of maintenance is unknown to the laws of this State.

Judgment affirmed.