Lessee of SEMUEL DAVIDSON *against* JAMES HEYDOM.

Deed to A and B, their heirsand assigns, tenendum to A and B, their heirs and assigns, and to the heirs and assigns of the survivor of them, forever, passes a joint-tenancy which may be severed either by A's assignment of all his estate to trustees to enable them to pay his debts, or by a judgment and execution, had against him in his life-time, and the lands levied on.

EJECTMENT for one undivided half part of a lot of ground in the manor of Bedford, containing 17¾ acres and 11 perches.

John Penn, junior, and John Penn, senior, the late proprietaries, being seized of the premises, by deed dated 22d September 1786, in consideration of 71*l.* granted and conveyed to Bernard Dougherty and Mary Kinkade, their heirs and assigns, the same premises, bounded, &c. "to have and to hold the same "to the said Bernard Dougherty and Mary Kinkade, their heirs and assigns, and to the heirs and assigns of the survivor of them. forever." The said Bernard Dougherty afterwards becoming embarrassed, by deed dated 23d June 1788, in consideration of the debts by him owing, and of 5*s.*, granted and conveyed to Thomas Fitzsimons, Isaac Hazelhurst, Miers Fisher and Thomas Smith, their heirs and assigns, all and singular his lands and real estate whatever, and all his personal property, in trust, to sell and dispose thereof, and pay the moneys arising therefrom, to and among all his creditors, in proportion to their several debts; and further appointed them his attorneys, to all things necessary in the premises, &c.

A judgment was afterwards entered up at the suit of Thomas Fitz-simmons and others, against the said Dougherty, and a *fieri facias* issued thereon, returnable to January term 1790, on which the lot in question, marked No. 23, was seized and taken in execution, but no writ of *venditioni exponas* was taken out.

On the 27th June 1797, the trustees granted and conveyed to the lessor of the plaintiff one moiety of the said lot, No. 23, in considera-tion of 500 dollars.

Mary Kinkade survived Bernard Dougherty. On the 5th December 1789, she married James Heydon. He, together with his wife, on the 4th November 1794, conveyed the premises (*inter alia*) by deed to Patrick Campbell in fee, who afterwards on the same day re-conveyed the same to James Heydon, his heirs and assigns, in trust for the use of the said James and Mary his wife, during their joint lives and the sur-vivor of them, remainder to the heirs of the body of the said Mary by the said James, remainder to the right heirs of the said James. She died shortly afterwards, and the defendant held the whole of the lot in question, under the deeds from Messrs. Penns and Campbell.

Two questions of law arose on the trial. 1. Whether an estate in joint tenancy was conveyed by the deed of 1786 ? 2. And if so, whether it had been severed in the life time of Dougherty.

Mr. Duncan for the plaintiff. The operation of the conveyance from Messrs. Penns creates a joint tenancy. The estate granted there-by possesses the four properties peculiar to joint tenancy, unity of in-terests, title, time and possession. 2 Bl. Com. 180. If lands be given to two and the heirs of one of them, this is a good jointure, the one has a freehold and the other a fee simple ; so if given to two and the heirs of the body of one of them, the one has a freehold and the other a fee tail. *Ib.* 181. Lit. § 285. Reliance will be placed on the subsequent words of the *tenendum*, "to the heirs and assigns of the survivor of "them." But what effect do they produce ? Are they not merely descriptive of a jointure in estate? Though superadded they are at best but superfluous. They do not operate by way of lim-itation, and our adversaries will find some difficulty in arranging the nature of this property under any other class than that of joint-tenancy. What species of estate will they denominate it ? If under the words of tenure, it would necessarily and at all events go to the survivor, a most ingenious method of protecting the lands of an aged person from his creditors is discovered, and they could not be affected by

Judgments and execution for his just debt! It is admitted in 2 Vern. 223, that a deed to A. and B. of lands equally to be divided between them, and to the survivor of them, passes a joint-tenancy.

2. Taking it for granted, that a joint-tenancy passed by the deed, it contended, that it may be destroyed either by the assignment in trust, or by the judgment and execution.

The former was a valid deed for a good and valuable consideration and for an honest purpose to pay just debts, and divested all the interest of Dougherty in this lot. Even a lease by one joint-tenant during his life to another, has been thought by some to determine the jointure, as the lease he made continued as long as he lived. Co. Lit. 193. *a.* Joint-tenancy being odious in equity, where there are three joint-tenants for a term of years, and one mortgages his third part it severs the joint estate. 1 Salk. 158. Even if this had been a deed in trust for the uses of Dougherty's will, it would have produced the same consequence; for though a joint estate is not devisable, it is otherwise of a feoffment to uses. 3 Burr. 1496-7. If a judgment be had and an execution sued out against one joint-tenant in his life, it shall bind the survivor. Co. Lit. 184. *b.* 3 Bac. Abr. 210.

Mr. Hamilton for the defendant. Courts of justice formerly favored joint-tenancy, but it is now otherwise. How the word heirs came to signify the heirs of one of them, so as to exclude the heirs of him who died first, is only to be determined on *feudal* principles. 3 Bac. 204. If an estate be limited to husband and wife, and the heirs of the body of the husband, they are joint-tenants for life; if he makes a feoffment, this will be a discontinuance to his issue; if he suffers a common recovery with single voucher, this will bind neither issue nor remainders. 3 Bac. Abr. 191. Neither can the husband charge such lands held with his wife in joint-tenancy by recognizance. *Ib.* 1 Rol. Abr. 346.

The words of the conveyed must determine the intention of the parties. Call the estate by whatever name you please, it was the design of the deed, that the lot should go to " the heirs and assigns of the survivor ;" and it would have been idle to have superadded those words, to what was a clear joint-tenancy before, if something more had not been contemplated.

The validity of the assignment may be justly questioned. It certainly would not be sanctioned in England. The system of the bankrupt laws is, that the effects of a bankrupt shall be taken out of his own possession, and divided equally amongst all his creditors. A deed of a man's whole estate to trustees of his own naming, is an act of

bankruptcy in itself, and defeats the whole bankrupt law.  2 Burr. 829, 830.

In this deed are couched unlimited powers to dispose of all the grantor's real and personal estate, collect his debts, &c.  But it is not granted to creditors.  Suppose there had been sufficient to pay all the debts of Dougherty, without selling the present lot of ground, would the trustees be authorized to dispose of it?  May it not be compared to the case of an absolute deed on the face of it, accompanied with a defeasance on payment of a certain sum of money, which is no more than a mere morgage?

The mere levying lands, without a *venditioni* issued, cannot be called an execution executed.

Yeates J.  My brother Smith being a nominal trustee in the deed of assignment, though wholly uninterested, utterly refuses taking any part in the cause.  I for my own part, feel no difficulty on either question. The words made use of in the original deed correctly describe an estate in joint-tenancy.  The expressions in the latter part of the clause of *tenendum*, about which the difficulty is raised, exclude any doubt respecting the grammatical construction, to whose heirs the ultimate fee is to go.—We need not on this occasion recur to feudal principles for the solution of the question.  In fact, the superadded words mean no more than what the law would imply without them.  They may be justly styled legal *tautology*, and fairly fall within the known maxim, " *expressio eorum quœ tacite insunt nihil operatur.* "

The cases read by the defendant's counsel relating to baron and feme holding an estate in joint-tenancy, are exceptions to the general rule, and only prove it.  Between them there are no moieties, being considered one person in law.  3 Bac. 191.  A husband joint-tenant may not charge the lands held with his wife, by recognizance, but others may.  Co. Lit. 184, *b.*  His feoffment may not be good, but it will scarcely be asserted, that one joint-tenant may not determine the estate by his deed.

The deed to the trustees vests in them all the real and personal estate of Dougherty, to enable them to discharge his debts, in proportion to the just demands of his several creditors.  It does the same thing, as would be effected with more expense by the bankrupt laws, and is more beneficial in another light to the creditors, as there is no allowance to be made to the debtor, in case of his paying 10s. or 15s. in the pound. I agree, that during the operation of the bankrupt acts, the creditors would not be bound by this assignment but it lies only with them to impeach it.  It is premature to decide how matters would be, in case the

debts were fully paid, and surplus examined. The assignment charges the legal estate and operates as a severance. The execution issued on the judgment has the same effect. If Dougherty had died immediately afterwards, a *venditioni exponas* might have been taken out and the lands sold forthwith, without any *scire facias*. On both points, therefore, I am of opinion with the plaintiff.

Verdict <i>pro quer</i>.