[No. E009609. Fourth Dist., Div. Two. Dec. 22, 1992.]

LAURENE GROTHE, Plaintiff and Respondent, v.
CORTLANDT CORPORATION et al., Defendants and Appellants.

**COUNSEL**

James S. Davis, in pro. per., and for Defendants and Appellants.

George R. Ryskamp and Donald R. Schindler for Plaintiff and Respondent.

**OPINION**

**DABNEY, Acting P. J.**—Defendants Cortlandt Corporation and James S. Davis (hereafter referred to collectively for convenience as defendant) appeal from an order of the Superior Court of Riverside County, granting a

preliminary injunction restraining the sale of certain real property held by plaintiff Laurene Grothe, to satisfy a judgment against David Daniel Ribis. Plaintiff held the property in joint tenancy with Ribis, the judgment debtor. Defendant, as assignee of the judgment creditor, began proceedings to collect the judgment; however, Ribis died before the property could be sold at execution. Plaintiff maintains that Ribis's interest passed to her as the surviving joint tenant and extinguished any interest against which defendant may satisfy its judgment lien. Defendant argues that the sheriff's levy severed the joint tenancy. For the reasons stated below, we reject defendant's contention.

### STATEMENT OF FACTS

In 1983, plaintiff and Ribis purchased real property in Riverside County, taking title as joint tenants. In 1987, Julio Acosta and Lucille Acosta obtained default judgments against plaintiff and Ribis. Plaintiff successfully moved to set aside the default judgment as to her; however, the judgment against Ribis remained outstanding. The Acostas assigned the judgment to defendant in March 1990. Defendant began proceedings to levy on the property, and in July 1990 the Riverside County Sheriff recorded a notice of levy under writ of execution against the property.

Ribis died in October 1990, before expiration of the 120-day grace period staying sale of the property under Code of Civil Procedure section 701.545. Believing herself entitled to the property as the surviving joint tenant, plaintiff filed an affidavit of death of joint tenant in conjunction with the opening of an escrow to purchase a mobilehome for the property. During the course of the escrow, plaintiff learned for the first time of the judgment lien and levy. Upon discovering that the property had been noticed for sale on March 5, 1991, plaintiff obtained a temporary restraining order enjoining the sale of the property, and subsequently obtained a preliminary injunction halting the sale. The order granting preliminary injunction was entered June 10, 1991, and the notice of appeal was timely filed on June 12, 1991.

### DISCUSSION

 The purpose of a preliminary injunction is to preserve the status quo pending final resolution upon a trial. (*Scaringe* v. *J.C.C. Enterprises, Inc.* (1988) 205 Cal.App.3d 1536, 1542 [253 Cal.Rptr. 344].) The decision whether to grant a preliminary injunction is a matter within the sound discretion of the trial court. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121]. The ruling is based on the trial court's determination of two related issues: the likelihood that the plaintiff

will prevail on the merits at trial, and the harm the plaintiff will suffer if the relief requested is not granted as compared to the harm the defendants would suffer if the preliminary injunction were issued. (*Id.*, at pp. 69-70.)

Defendants, who here challenge the injunction, bear the burden of showing an abuse of discretion; that is, that the trial court's determination to grant the preliminary injunction " ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 69; see also *Scaringe* v. *J.C.C. Enterprises, Inc., supra,* 205 Cal.App.3d at p. 1542.) ▮ On appeal we view the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in favor of the trial court's order. (*Triple A Machine Shop, Inc.* v. *State of California* (1989) 213 Cal.App.3d 131, 138 [261 Cal.Rptr. 493].)

▮ An analysis of the legal issue presented, based on the evidence adduced, leads us to conclude that the joint tenancy was not severed by the sheriff's levy. Defendants thus fail to demonstrate the trial court abused its discretion in issuing the preliminary injunction to preserve the plaintiff's rights.

A joint tenancy is a joint interest owned by two or more persons, who have equal interests among themselves. (Civ. Code § 683; *Cole* v. *Cole* (1956) 139 Cal.App.2d 691, 695 [294 P.2d 494].) The joint tenants must share unity of time, title, interest and possession. ▮ A distinctive feature of joint tenancy, as opposed to other interests in land, is the right of survivorship. This means that when one joint tenant dies, the entire estate belongs automatically to the surviving joint tenant(s). (Cf. *Estate of Blair* (1988) 199 Cal.App.3d 161, 166 [244 Cal.Rptr. 627]; *Santoro* v. *Carbone* (1972) 22 Cal.App.3d 721, 729 [99 Cal.Rptr. 488] overruled on other grounds in *Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 30 [216 Cal.Rptr. 130, 702 P.2d 212].) Nothing "passes" from the deceased joint tenant to the survivor; rather, the survivor takes from the instrument by which the joint tenancy was created. (*Rupp* v. *Kahn* (1966) 246 Cal.App.2d 188, 196 [55 Cal.Rptr. 108]; *Zeigler* v. *Bonnell* (1942) 52 Cal.App.2d 217, 219-220 [126 P.2d 118].)

▮ If, however, one of the four unities of time, title, interest and possession is destroyed before the death of a joint tenant, the joint tenancy is severed. (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 155 [133 Cal.Rptr. 10, 554 P.2d 330].) "A joint tenancy [may be] terminated by a voluntary conveyance . . . by a judgment in partition, or by an execution sale." (*Clark* v. *Carter* (1968) 265 Cal.App.2d 291, 294 [70 Cal.Rptr. 923] disagreed with on another point in *Estate of Carpenter* (1983) 140 Cal.App.3d 709, 711 [189

Cal.Rptr. 651] and *Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524, 531 [162 Cal.Rptr. 530, 7 A.L.R.4th 1261].) A sale or conveyance of title to a third party, whether voluntary or involuntary, obviously destroys the unities of the joint tenancy and makes the purchaser a tenant in common with the remaining joint tenant(s). (2 Miller & Starr, Cal. Real Estate (rev. ed. 1977) § 13:20, p. 470.) In particular, California courts have long acknowledged that sale upon execution of a judgment severs a joint tenancy. (*Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 515 [183 P.2d 1]; accord *Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755, 760 [90 Cal.Rptr. 47]; *Zeigler* v. *Bonnell*, *supra*, 52 Cal.App.2d at p. 219; *Pepin* v. *Stricklin* (1931) 114 Cal.App. 32, 35 [299 P. 557].]

By contrast, the mere imposition of a lien or encumbrance does not sever the joint tenancy. (*Tenhet* v. *Boswell*, *supra*, 18 Cal.3d at pp. 159-160; *People* v. *Nogarr* (1958) 164 Cal.App.2d 591, 594 [330 P.2d 858, 67 A.L.R.2d 992].) "[A] joint tenant may, during his lifetime, grant certain rights in the joint property without severing the tenancy. But when such a joint tenant dies his interest dies with him, and any encumbrances placed by him on the property become unenforceable against the surviving joint tenant." (*Tenhet* v. *Boswell*, *supra*, 18 Cal.3d at pp. 159-160 [a lease by one joint tenant of his interest did not sever the joint tenancy, and expired upon his death]; see *People* v. *Nogarr*, *supra*, 164 Cal.App.2d at pp. 594-595 [mortgage lien did not sever joint tenancy]; see also, *Dando* v. *Dando* (1940) 37 Cal.App.2d 371, 372-373 [99 P.2d 561] [mere pendency of an action in partition does not sever a joint tenancy].)

The question before us, then, is whether a recorded *levy* which has not yet resulted in an execution *sale* will sever a joint tenancy.

We have found no California cases which directly address the problem, but *Zeigler* v. *Bonnell*, *supra*, 52 Cal.App.2d 217, is instructive. There, as here, the property was held by two joint tenants, one of whom was a judgment debtor. The court faced the question "[If] the judgment debtor dies prior to a levy of execution but after an abstract of the judgment has been recorded, and a levy of execution is made after the death of the judgment debtor . . . does the purchaser at the execution sale secure any rights in the property, or does the surviving joint tenant take the entire property free and clear of the lien of the judgment?" (*Id.* at p. 219.) The court held that the judgment lien "prior to execution" (*ibid.*) did not sever the joint tenancy. Upon the death of the debtor joint tenant, there remained no interest or property right against which the judgment lien could be operative. The creditor could "immediately execute *and sell*" the debtor's interest, which would sever the joint tenancy. (*Id.* at p. 221, italics added.) But the creditor

may also choose to "keep [the] lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants." (*Ibid.*) If the creditor chooses to gamble that the judgment debtor will survive, the judgment lien would immediately attach to the entire property. On the other hand, "If the judgment debtor is the first to die, the lien is lost. If the creditor sits back to await this contingency . . . he assumes the risk of losing his lien." (*Id.* at pp. 221-222.)

Defendant acknowledges that a judgment lien does not sever the joint tenancy, but argues that under *Zeigler* an "execution or levy made during the debtor's lifetime does." Defendant points to language in the opinion to the effect that a "mere lien" did not sever the joint tenancy when " 'no *execution was issued* or *levy made* on his joint tenancy interest during the deceased's lifetime.' " (*Zeigler* v. *Bonnell, supra,* 52 Cal.App.2d at p. 220, quoting *Musa* v. *Segelke & Kohlhaus Co.* (1937) 224 Wis. 432 [272 N.W. 657, 111 A.L.R. 168], italics added.)

Defendant misunderstands *Zeigler.* The *Zeigler* court distinguished the judgment lien imposed before the debtor's death from the "levy of execution" made after his death. The court did not explicitly define what it meant by "levy of execution," but its comment that the creditor can *"immediately execute and sell"* the debtor's interest demonstrates that the court viewed the levy as integral to the sale of the property, and not as an independent event which would alone sever the joint tenancy. (*Zeigler* v. *Bonnell, supra,* 52 Cal.App.2d at p. 221, italics added.) The levy in *Zeigler* was in fact followed by a sale, and both events occurred after the debtor joint tenant's death. The *Zeigler* court, then, contemplated a levy followed by sale in relatively short order; it was not called upon to distinguish between "levy" and "sale" to determine when the joint tenancy was severed.[1]

Defendant attempts to distinguish a levy from a judgment lien on the basis that a levy applies to specific property, and that the sheriff, by recording the writ and notice of levy, "has seized and taken constructive possession of the real property" thereby interrupting the unity of possession and severing the joint tenancy. Defendant's contention was implicitly rejected in *People* v. *Nogarr, supra,* 164 Cal.App.2d 591. There, the court held that a mortgage lien created by one joint tenant did not survive his death. Following *Zeigler,* the court held the mortgage lien attached only to the interest of the debtor

---

[1]Significantly, at the time *Zeigler* was decided there was no presale right to cure or redeem the property. Before 1983, the debtor had a statutory right to redeem the property *after* the sale. The 1983 amendments to the Code of Civil Procedure replaced this postsale right of redemption with a 120-day grace period in which to redeem the property *before* sale. (1982 Creditors' Remedies Legislation with Official Comments (Sept. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1001, at pp. 1111-1112, 1115.)

joint tenant, and was extinguished on his death, even though "[t]he only distinction between the two liens is that the mortgage lien is a lien upon specific property while the judgment lien is a general lien upon all real property of the judgment debtor." (*Id.* at p. 595.) ██ In actuality, the execution lien which attaches to specific property by virtue of the levy does not sever the joint tenancy any more than the judgment lien did. The fact that a lien may be designated or executed against specific property therefore does not in itself sever the joint tenancy.

Defendant seizes on the common definition of "levy" as a "seizure" to urge that the levy has destroyed the joint tenant's right of possession. Not so. ██ The word used in this sense refers to a levy on *personal* property.[2] The term "levy" as applied to *land* has had "considerable elasticity of meaning; . . ." (*Lehnhardt v. Jennings* (1897) 119 Cal. 192, 194 [51 P. 195].) Under California procedure a levy in the context of execution on real property is merely "the act by which property to be taken and sold is designated or set aside." (8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 108, p. 109; *Lehnhardt v. Jennings, supra,* 119 Cal. at pp. 195-197 [a valid levy was made when the sheriff manifested his intent to appropriate particular land already subject to a judgment lien by giving notice of the sale].)

California's judgment enforcement process as it presently exists underscores the nature of a "levy" as distinct from a "sale."

After obtaining a money judgment, the judgment creditor creates a judgment lien by recording an abstract or certified copy of the judgment with the county recorder. (Code Civ. Proc., § 697.310, subd. (a).) Subject to certain exceptions, the lien attaches to all real property interests owned by the judgment debtor in that county. (Code Civ. Proc., § 697.340, subd. (a).) After obtaining a judgment lien, the creditor must take additional steps to collect on the judgment, and the usual method is to levy on specific property

---

[2]Defendant cites two cases, *Dover Trust Co. v. Brooks* (1932) 111 N.J.Eq. 40 [160 A. 890] and *American Oil Co. v. Falconer* (1939) 136 Pa.Super. 598 [8 A.2d 418], for the proposition that a levy will sever a joint tenancy. (See Annot. (1946) 161 A.L.R. 1139, 1141; 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 21, p. 115.) These cases are distinguishable— both involve personal property, i.e., bank accounts held in joint tenancy. In *Dover Trust,* the bank brought an interpleader action after the sheriff levied on the account. The court found that "service of the writ of attachment and the levy under execution" severed the joint tenancy. (*Dover Trust Co. v. Brooks, supra,* 160 A. at p. 891.) In *American Oil,* the joint tenancy was severed when a creditor issued an attachment execution and summoned the bank as garnishee. (*American Oil Co. v. Falconer, supra,* 8 A.2d at pp. 419, 421.) In both cases, the bank's obligation to turn over the funds obviously interfered with the depositors' access to and control over the funds. A real property levy does not in itself interfere with a joint tenant's rights of title or possession.

by writ of execution. (Schwartz et al., Cal. Practice Guide, Enforcing Judgments and Debts (The Rutter Group 1992) ¶ 6:300.) The judgment creditor obtains from the county clerk a writ of execution, directing the sheriff or other levying officer to enforce the judgment. (Code Civ. Proc., §§ 699.510, 699.520.) The creditor delivers the writ to the levying officer with instructions including a description of the property to be levied upon. (Code Civ. Proc., § 687.010, subd. (a)(1).) The officer levies on real property *by recording a copy of the writ and a notice of levy with the county recorder.* (Code Civ. Proc., § 700.015, subd. (a).) The levy creates an execution lien on the property. (Code Civ. Proc., § 697.710.) Service of a copy of the writ and notice of levy on the judgment debtor triggers a 120-day grace period during which the debtor may redeem the property from the lien. (Code Civ. Proc., § 701.545.) Only after this period expires may the levying officer then proceed to notice the property for sale. (Code Civ. Proc., § 701.540 et seq.)

Thus, under the present statutory scheme the "levy," as opposed to the ultimate sale of the property, does not destroy the unities any more than any other kind of lien against a specific property. As the *Nogarr* court stated, although a mortgage was a lien attached to a specific parcel of property, "as it did not operate to transfer the legal title or any title to the mortgagees or entitle the mortgagees to possession it did not destroy any of the unities and therefore the estate in joint tenancy was not severed . . . ." (*People* v. *Nogarr, supra,* 164 Cal.App.2d at p. 594.) Similarly, the sheriff's levy does not effect a change in title or right to possession up to the moment of sale.

Cases from other jurisdictions bear out this distinction. In *Van Antwerp* v. *Horan* (1945) 390 Ill. 449 [61 N.E.2d 358, 161 A.L.R. 1133], the court concluded that "the levy gives no greater interest than that which the judgment creditor already possessed" namely, "a lien which might or might not ripen into title, . . ." (*Id.,* 61 N.E.2d at p. 360.) The court distinguished cases in which the levy involved actual seizure of the property, noting that "seizure would of necessity interfere with the possession of the joint tenant" and thereby sever the joint tenancy. (*Ibid.*; see also fn. 2, *ante.*) However, under Illinois procedure, as here, "it appears that the levy is just another step in the process directed toward a final sale." (*Ibid.*) It does not divest title or otherwise diminish the interest of one joint tenant so as to sever the joint tenancy. (*Ibid.*) Under Illinois law the joint tenancy is preserved "until a conveyance divesting one tenant of his interest has been executed by the sheriff following a judgment sale . . . ." (*In re Estate of Woodshank* (1975) 27 Ill.App.3d 444 [325 N.E.2d 686, 689].)

In *Knibb* v. *Security Ins. Co. of New Haven* (1979) 121 R.I. 406 [399 A.2d 1214], a case remarkably like this one, the joint tenant died after his

judgment creditor had recorded levies of execution but before the property was sold. The Supreme Court of Rhode Island held that the levy did not sever the joint tenancy, because it did not destroy the unities of time, title, interest or possession. (*Id.*, 399 A.2d at p. 1216.) The levy did not affect the unities of time and title, since the joint tenants acquired the property at the same time by means of the same conveyance. (*Ibid.*) Because the land was not subject to statutory seizure in the same manner as goods and chattels, "obviously the levy did not interfere with the possession of the joint tenants." (*Id.*, 399 A.2d at p. 1217.) The levy did not destroy the unity of interest because, "[a]t the time of the levy of the execution, [the judgment creditor] had a mere lien upon the property, which only had the potential of ripening into title following a judicial sale." (*Ibid.*)

In addition, the Colorado Supreme Court has recognized, in dictum, that " '[w]hile interest of a joint tenant is subject to levy, it is not severed until sale.' " (*First Nat. Bank* v. *Energy Fuels Corp.* (1980) 200 Colo. 540 [618 P.2d 1115, 1118].)

We have found no case, on the other hand, adopting defendant's view that a levy on real property accomplished by merely recording documents evidencing an intent to take and sell the property, without more, severs the joint tenancy. Defendant relies on *Davidson's Lessee* v. *Heydom* (1799 Pa.) 2 Yeates 459, an old Pennsylvania case, for the proposition that issuance of an execution severs the joint tenancy if the land may be sold without further proceedings. (See *Musa* v. *Segelke & Kohlhaus Co., supra,* 272 N.W. 657, 659 citing *Davidson's Lessee.*) While *Davidson's Lessee* may be correct in its context, it is inapposite here, because the California statutory scheme requires further proceedings after levy before the land may be sold.

Although some cases from other states appear unclear as to exactly when in the execution process a joint tenancy is severed, nothing in these cases is inconsistent with our conclusion that a recorded levy alone, signifying nothing more than an official designation of the property *subject to execution*, does not sever the joint tenancy. *Szelenyi* v. *Miller* (Me. 1989) 564 A.2d 768, 770, states that the "end result" of execution—presumably the change of title resulting from a sale—is a severance of the joint tenancy. In *Eastern Shore Bldg. & Loan Corp.* v. *Bank of Somerset* (1969) 253 Md. 525 [253 A.2d 367, 370], the court stated that "the mere entry of a judgment against one of the joint tenants does not destroy any of the four unities of interest, title, time and possession and hence, until there is an *execution* on the judgment which will destroy one or more of these unities, there is no severance of the joint tenancy." Although the court did not elaborate on the nature of the execution proceedings under Maryland law, the distinction

between acts which interfere with the rights of the joint tenants and those which do not is clearly made. *New Haven Trolley & Bus Employees Cr. Union v. Hill* (1958) 145 Conn. 332 [142 A.2d 730, 732] implicitly recognized the significance of the sale as opposed to preliminary steps in the execution process, stating that "[t]he execution levy, *at least upon the sale*, operates as an involuntary conveyance by the joint tenant . . . ." (Italics added.)

Defendant objects that the levy did interfere with the essential unities, asserting that "[a]s of the date of the levy the debtor has lost control of the property." Defendant does not explain, and we fail to see, how this is so. As observed by the *Knibb* court, the levy does not disturb the essential elements of the owner's possession: physical control over and the ability to exclude others from, the land. (Rest., Property, § 7.)

It is true that after the levy, prior to the sale, the party in possession can be restrained from committing waste on the property pursuant to Code of Civil Procedure section 745. However, the mere availability of an action for waste does not disturb possession or sever the joint tenancy. Mortgagors can also be restrained from committing waste (Civ. Code, § 2929), but as we have seen, a joint tenant who mortgages his interest does not sever the joint tenancy. Moreover, a separate court order is required to allow the levying officer to take possession of the property, and the court must determine that the property is perishable or will greatly depreciate in value or that the order will otherwise best serve the interests of the parties. (Code Civ. Proc., § 699.070.)

 Neither does the sheriff have constructive possession of the property. The sheriff is not immediately entitled to sell the property and has no interest in the property beyond an *intent* to sell it if it survives the 120-day period unredeemed. This is analogous to the threat of foreclosure imposed by a mortgage lien, which does not sever a joint tenancy. (Cf. *People v. Nogarr, supra,* 164 Cal.App.2d at p. 595.)

We also doubt that the Legislature, when it created the grace period, intended to wrest control of the property from the owner during this time and give it to the levying officer. Rather, the legislative history states that the provision is designed to give the judgment debtor "time to redeem the property from the judgment creditor's lien before the sale, to sell the property, or to seek the attendance of other potential purchasers at the judicial sale." (16 Cal. Law Revision Com. Rep., *supra,* p. 1112.) The grace period thus allows the debtor "an opportunity to retain the property." (*Id.* at p. 1120.) The statutory revision was thus designed to preserve the debtor's rights in his or her property, not to diminish them.

To hold otherwise would yield anomalous results, as the following hypothetical illustrates. If the levy alone severed the joint tenancy, then during the grace period, prior to sale, the debtor and the other joint tenant would be tenants in common. The nondebtor joint tenant could die, leaving the debtor deprived of the right of survivorship in the property and of the ability to satisfy the creditor from the augmented share. The nondebtor's interest would pass to his or her heirs. Even if the debtor thereafter redeemed the property prior to the sale, thereby extinguishing any potential interest of the creditor, the debtor joint tenant could never fully restore his or her rights in the property, and instead would be left with a diminished interest as tenant in common with the decedent's heirs. It makes better sense, both practically and equitably, to hold the joint tenancy is not severed until after the grace period is over and the sale completed.

We also reject defendant's suggestion that because the title of the purchaser at an execution sale relates back to the date of the lien, "*the levy* and not the sale severs the title." A similar contention was raised and rejected in *Zeigler* v. *Bonnell, supra,* 52 Cal.App.2d at page 220. Prior to the sale, there is no title in a purchaser to relate back and the existing title in the joint tenants remains undisturbed except for the lien, which as we have repeatedly shown, does not sever the joint tenancy. Moreover, the "relation back" doctrine "only applies when the rights of innocent third parties have not intervened. Here the rights of the surviving joint tenant intervened between the date of the lien and the date of the sale." (*Ibid.*) Finally, defendant urges that the creditor in this situation is penalized in favor of the surviving joint tenant. This is "unfair" only in the sense that one party or the other must lose. Defendant forgets that, as stated above, the surviving joint tenant is enjoying a right fixed when the joint tenancy was created, and does not take anything from the decedent or the decedent's creditor. Moreover, as the court pointed out in *Zeigler* v. *Bonnell, supra,* 52 Cal.App.2d at page 221, in the aggregate, creditors stand an equal chance of winning this particular gamble, since the nondebtor joint tenant could die first, leaving the debtor with a larger share upon which to execute. The *Zeigler* court has thus already resolved the policy issue in favor of the surviving joint tenants, concluding that "[t]his rule is sound in theory and fair in its operation." (*Ibid.*) We see no compelling reason to depart from the underlying reasoning of that case.

Plaintiff has moved for an order admitting additional evidence (including copies of the writ of execution, notice of levy, etc.) in support of her argument that unity of possession was not disturbed because the property was levied upon and the sale noticed as to the interests of both joint tenants, apparently by mistake. However, since plaintiff was not in fact subject to the default judgment, only Ribis's interest was subject to execution, and we

must assume that had Ribis remained alive, plaintiff would have defended her interest in the property on that basis. Thus, the levy threatened only Ribis's interest, careless or clerical errors notwithstanding. Since we have determined that a mere levy against one joint tenant's interest does not sever the joint tenancy, we find it unnecessary to examine the additional evidence proffered by plaintiff, and the motion is denied.

## DISPOSITION

The order is affirmed.

Hollenhorst, J., and Timlin, J., concurred.