Filed 9/22/25  Yellow Dog Holdings v. Ascentium Capital CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| YELLOW DOG HOLDINGS, LLC,<br><br>Cross-complainant and Appellant,<br><br>v.<br><br>ASCENTIUM CAPITAL, LLC et al.,<br><br>Cross-defendants and Respondents. | G063976<br><br>(Super. Ct. No. 30-2019-01073663)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Shawn Nelson, Judge. Affirmed.

Carlsen Law Corporation and Miles Carlsen for Cross-complainant and Appellant.

Frandzel Robins Bloom & Csato, Andrew K. Alper and Hal D. Goldflam for Cross-defendants and Respondents.

\*          \*          \*

The underlying dispute arises from a lease agreement by which cross-complainant Yellow Dog Holdings, LLC (Yellow Dog) leased paint booth equipment from Alliance Funding Group (Alliance), a non-party to this appeal. Alliance assigned its rights to lease payments to cross-defendant Ascentium Capital, LLC (Ascentium). After Alliance sued Yellow Dog for unpaid payments, Yellow Dog filed a cross-complaint against Alliance and Ascentium, seeking declaratory relief regarding ownership of the paint booth equipment, among other things.

In a prior appeal, another panel of this court reversed, in part, the trial court's order sustaining Ascentium's demurrer to Yellow Dog's declaratory relief claims. (*Yellow Dog Holdings, LLC v. Ascentium Capital, LLC* (Mar. 3, 2022, G059835) [nonpub. opn.] (*Yellow Dog I*).) On remand, the case proceeded to a bench trial. At the close of Yellow Dog's evidence, the court granted Ascentium's motion for judgment under Code of Civil Procedure section 631.8[1] and entered judgment in its favor. Yellow Dog now appeals from the judgment denying its claims for declaratory relief against Ascentium.

Yellow Dog raises three arguments on appeal. First, it contends the court improperly concluded declaratory relief was unavailable due to Alliance's absence from the litigation—an error it maintains is inconsistent with the law of the case established in *Yellow Dog I*. Second, Yellow Dog claims Alliance's dismissal of its complaint with prejudice operated as a retraxit, precluding any further assertion of its rights under the lease. Third, it argues the evidence established Yellow Dog's ownership of the paint booth. For the reasons *infra*,

---

[1] All further statutory references are to the Code of Civil Procedure.

we disagree with Yellow Dog's contentions and affirm the judgment.[2]

FACTS

I.

THE LEASE AGREEMENT AND ASSIGNMENT

In 2014, Yellow Dog entered into an equipment lease agreement with Alliance whereby Yellow Dog leased a paint booth. The lease required Yellow Dog to make 60 monthly payments. Douglas Pientock and William Sonichsen were guarantors on the lease.

At the end of the lease term, Yellow Dog could purchase the equipment for fair market value, renew the lease, or return the equipment. The lease stated: "At least 120 days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 12 month term, and thereafter for successive 6 month terms until you deliver the Equipment to us."

Early in the lease term, Alliance assigned its right to receive 58 of the remaining monthly payments to Ascentium and granted Ascentium a security interest in the paint booth, but Alliance retained ownership of the paint booth. Alliance sent a letter to Yellow Dog, advising it had "sold and assigned [Yellow Dog's] equipment financing to [Ascentium]," and that "[Ascentium] . . . now owns all of our rights and interests under the lease and in the equipment."

_____

[2] Cross-defendant Regions Bank is the successor to Ascentium. For clarity and consistency with the appellate briefing, we refer to the entity throughout this opinion as "Ascentium."

3

Ascentium perfected the security interest granted by Alliance by filing a UCC financing statement (Form UCC-1) with the Indiana Secretary of State. To maintain the effectiveness of that filing, Ascentium filed a continuation statement with the Indiana Secretary of State a few years later.[3]

In October 2018, Ascentium sent a letter to Yellow Dog stating the remaining payoff amount under the lease was $4,543.42. Assuming Yellow Dog timely paid the outstanding amount, the letter stated: "(i) the Agreement and all of your obligations thereunder, except for any indemnification undertaking, shall immediately terminate and be deemed satisfied in full, (ii) Ascentium will release and terminate all security interests and liens, created by Ascentium, as security for the obligations under the Agreement, and (iii) Ascentium authorizes you or your authorized representative to prepare and file any Uniform Commercial Code termination statements as are reasonably necessary to terminate and release, as of record, the financing statements previously filed by Ascentium with respect to the Agreement."

Yellow Dog ultimately paid the 58 remaining payments to Ascentium. In April 2019, Ascentium sent a letter to Yellow Dog confirming "the Agreement . . . . has been paid in full." Around a week later, Ascentium sent an e-mail to Yellow Dog, indicating that "[t]he broker (Alliance Funding Group) does have a FMV buy-out residual in the event the customer wishes to retain the leased equipment."

---

[3] A UCC financing statement is a public filing used to perfect a secured party's interest in collateral under the Uniform Commercial Code.

## II.

### THE COMPLAINT AND CROSS-COMPLAINT

Shortly after, Alliance filed a complaint against Yellow Dog and the two individual guarantors, alleging causes of action for breach of the lease agreement and written guarantees. According to Alliance, Yellow Dog did not provide timely written notice of its intent to purchase or return the equipment as required under the lease, triggering an automatic 12-month renewal of the lease. Yellow Dog allegedly defaulted on its payment obligations and refused to return the equipment to Alliance.

In May 2020, Yellow Dog and the two individual guarantors (collectively cross-complainants) filed a second amended cross-complaint (SACC) against Alliance and Ascentium, alleging two causes of action for declaratory relief. The SACC requested 13 judicial declarations: (1) Alliance relinquished its legal and equitable rights in the lease agreement and paint booth equipment; (2) Ascentium owned all those rights as the successor lessor; (3) cross-complainants paid all sums due and owing to Ascentium; (4) cross-complainants do not owe Alliance any money for a residual "buy-out" of the paint booth; (5) Alliance does not have a security interest or other rights in the paint booth; (6) Ascentium does not have a security interest or other rights in the paint booth; (7) the October 20, 2012 lease assignment between Alliance and Ascentium is unenforceable because it is fraudulent or unlawful; (8) the March 5, 2014 lease assignment between Alliance and Ascentium is unenforceable because it is fraudulent or unlawful; (9) any UCC-1 financing statements in favor of Ascentium after Ascentium's April 2019 payoff letter relative to the paint booth are unlawful and void; (10) any UCC-1 financing statements in favor of Alliance after its relinquishment of its rights relative to the paint booth are unlawful and void; (11) cross-complainants own the paint booth free and clear of any liens; (12) the jury trial waiver in

Alliance's guaranty contracts is unlawful and unenforceable; and (13) the jury trial waiver in Alliance's lease agreement is unlawful and unenforceable.

## III.

### ASCENTIUM'S DEMURRER TO THE SACC

Ascentium demurred to the SACC, and the court sustained the demurrer without leave to amend. The court concluded cross-complainants' claims were "based on past events, not on a current controversy, and/or appear[ ] to set forth alleged defenses to . . . [Alliance's] claims, rather than proper subjects of a declaratory relief claim."

Ascentium then moved for entry of a separate judgment in its favor because all claims to which it was a party had been resolved by the demurrer. The court granted the motion and entered judgment. Cross-complainants timely appealed.

In the meantime, the court sustained another demurrer filed by Alliance to a third amended cross-complaint. Alliance subsequently dismissed its complaint with prejudice.

## IV.

### THE COURT OF APPEAL DECISION REGARDING ASCENTIUM'S DEMURRER

In March 2022, another panel of this court held the trial court erred by sustaining Ascentium's demurrer to Yellow Dog's claims in the SACC but properly sustained the demurrer as to the individual guarantors. (*Yellow Dog I*, *supra*, G059835.) Among other things, we held the appeal was not moot even though Alliance had dismissed its complaint. (*Ibid.*) We explained: "Certainly, some of the items of declaratory relief sought by cross-complainants were mooted by Alliance's dismissal, including cross-complainants' contention that they do not owe Alliance any money. However, at least two of cross-complainants' requests for declaratory relief are not mooted by Alliance's dismissal: (1) that any UCC-1

6

financing statements in favor of Ascentium after the date of Ascentium's payoff letter relative to the paint booth are unlawful and void; and (2) that cross-complainants own the paint booth free and clear of any liens. Both requests address potential controversies that might exist independent of Alliance's position." (*Ibid.*)

We also concluded the SACC adequately alleged an actual controversy with Ascentium. (*Yellow Dog I, supra*, G059835.) The cross-complainants contended Alliance had assigned its rights—including residual ownership and buyout rights in the paint booth—to Ascentium, and that Ascentium had subsequently released those rights. (*Ibid.*) Ascentium and Alliance, by contrast, disputed any such assignment or release. (*Ibid.*) In short, while the parties agreed the lease had been paid off, they disagreed over whether Yellow Dog thereby acquired ownership of the paint booth. (*Ibid.*)

We next noted the case presented two distinct factual questions: (1) whether Alliance or Ascentium held the residual ownership and buyout rights; and (2) whether Ascentium had released those rights. (*Yellow Dog I, supra*, G059835.) A judgment in Yellow Dog's favor against Alliance on the basis that Alliance had assigned its rights to Ascentium would resolve the first question. (*Ibid.*) But as we stated: "[S]uch a judgment would have created an opportunity for Ascentium to attempt to step into Alliance's shoes and reassert the residual ownership and buyout rights against cross-complainants. Only by obtaining a declaratory judgment against *both* Ascentium and Alliance could cross-complainants obtain complete relief and demonstrate their ownership of the paint booth under any theory." (*Ibid.*)

7

## V.

### REMAND PROCEEDINGS

A few months after the decision in *Yellow Dog I*, Ascentium filed a UCC financing termination statement with the Indiana Secretary of State.

In November 2023, the case proceeded to a bench trial. At the close of Yellow Dog's evidence, Ascentium moved for judgment under section 631.8. The court granted the motion and subsequently issued a statement of decision, finding Yellow Dog was not entitled to declaratory relief against Ascentium.

First, the court found Ascentium's UCC-1 financing statement and continuation statement were valid and lawful, and their presence after Yellow Dog's final lease payment in 2018 did not render them void or unlawful. According to the court, Yellow Dog failed to prove it owned the equipment so the UCC-1 filings were "irrelevant because the purposes of a filed UCC-1 financing statement is to perfect a security interest in a debtor's personal property and to provide notice to interested parties of same." The court further noted the UCC-1 filings were authorized by the lease and assignment, and Yellow Dog could have filed a UCC termination statement as noted in Ascentium's October 2018 letter but chose not to do so. The court also found no evidence the filings caused Yellow Dog any harm, interfered with its rights, or affected its ability to sell or refinance the equipment. The court accordingly concluded there was no reason to grant declaratory relief for the UCC-1 filings.

Second, the court held Yellow Dog's claim of ownership in the equipment could not be adjudicated because Alliance was not before the court, and even if the issue was ripe, the evidence did not support Yellow Dog's claim. The court emphasized Ascentium never asserted ownership of the equipment and acted only as a party under a collateral assignment from Alliance, which retained ownership and residual rights under the lease and assignment. In other words,

8

the court rejected Yellow Dog's assertion that Alliance transferred all its rights to Ascentium, and that Ascentium in turn relinquished those rights to Yellow Dog. According to the court, no evidence supported a waiver by Alliance of its residual interest, and Yellow Dog's own conduct—such as offering to return the equipment to Alliance—demonstrated it did not consider itself the owner. For these reasons, the court concluded Yellow Dog was not entitled to any declaration that it owned the equipment, or that Alliance or Ascentium had relinquished ownership rights.[4]

The court subsequently entered judgment that Yellow Dog recover nothing by way of its SACC. Yellow Dog timely appealed.

DISCUSSION

Yellow Dog contends the trial court erred by granting Ascentium's motion under section 631.8. It emphasizes our prior opinion in *Yellow Dog I* held certain claims for declaratory relief survived Alliance's dismissal and remained justiciable. According to Yellow Dog, the trial court adopted Ascentium's contrary position that declaratory relief was unavailable without Alliance's presence and ignored the law of the case doctrine. Yellow Dog further argues Alliance's dismissal with prejudice constituted a retraxit, eliminating any rights Alliance could assert. Finally, Yellow Dog claims the evidence supports Yellow Dog's ownership of the equipment.

---

[4] We need not summarize the court's holding regarding Yellow Dog's other declaratory relief requests because they are not relevant to the instant appeal.

The court did not err. It properly addressed the merits of Yellow Dog's declaratory relief claim, and Alliance's dismissal did not obligate the court to grant declaratory relief in Yellow Dog's favor. The court's finding that Yellow Dog failed to establish ownership also is supported by substantial evidence. We accordingly affirm the judgment.

## I.

### APPLICABLE LAW AND STANDARD OF REVIEW

Under section 1060, a party may seek declaratory relief where there is an "actual controversy relating to the legal rights and duties of the respective parties." Even if an actual controversy exists, the trial court has discretion to determine whether it is "necessary or proper at the time under all the circumstances" to exercise its power to provide declaratory relief. (§ 1061.) We review a trial court's denial of declaratory relief for abuse of discretion. (*Protect Our Neighborhoods v. City of Palm Springs* (2022) 73 Cal.App.5th 667, 676.)

Under section 631.8, a party may move for a judgment after the opposing party "has completed his presentation of evidence in a trial by the court." The trial court "as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision . . . ." (§ 631.8.) We review a judgment entered under section 631.8 for substantial evidence, reviewing the record in the light most favorable to the judgment. (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 658.)

## II.

### LAW OF THE CASE

Yellow Dog insists the trial court improperly adopted Ascentium's argument that declaratory relief was unavailable because Alliance was not a party to the action. According to Yellow Dog, this position is inconsistent with the

law of the case established in *Yellow Dog I*. For the reasons below, Yellow Dog ignores a majority of the trial court's ruling.

Under law of the case, when an appellate court states a principle or rule of law necessary to its decision, the principle or rule becomes law of the case and must be adhered to in the lower court and upon subsequent appeal. (*Nelson v. Tucker Ellis LLP* (2020) 48 Cal.App.5th 827, 837.)

Here, the court preliminarily noted it could not adjudicate Yellow Dog's ownership claim because Alliance was not before the court. It relied on the following statement in *Yellow Dog I*: "Only by obtaining a declaratory judgment against *both* Ascentium and Alliance could cross-complainants obtain complete relief and demonstrate their ownership of the paint booth under any theory." (*Yellow Dog I*, *supra*, G059835.) Regardless of whether the trial court's statement was entirely consistent with *Yellow Dog I*, the trial court nevertheless proceeded to consider the merits of Yellow Dog's claim. It found there was no evidence to support Yellow Dog's ownership of the equipment and denied declaratory relief on this ground. Because the court addressed the merits of Yellow Dog's declaratory relief claim, there is no basis for reversal.

## III.

### RETRAXIT

Yellow Dog next argues Alliance's dismissal of its case effectuated a retraxit, which precluded Ascentium from requesting the court deny declaratory relief. Yellow Dog appears to suggest Alliance's dismissal was, in effect, the equivalent of a judgment on the merits in Yellow Dog's favor. Not so.

A retraxit—now typically effected by a plaintiff's voluntary dismissal with prejudice— is deemed a judgment on the merits barring further litigation on the same claim between the same parties. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133

11

Cal.App.4th 1319, 1330–1331; *Morris v. Blank* (2001) 94 Cal.App.4th 823, 828; *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733–734.) While Alliance's dismissal may preclude it from pursuing further claims under the lease, the doctrine of retraxit has no application to Ascentium, which did not dismiss any claims. Yellow Dog cites no authority, and we are aware of none, holding Alliance's dismissal obligated the trial court to grant declaratory relief in Yellow Dog's favor against Ascentium. We decline to extend retraxit in this manner.

IV.

EVIDENCE REGARDING OWNERSHIP

Relying on Ascentium's October 2018 and April 2019 letters, Yellow Dog asserts it is entitled to a declaration that it owns the paint booth equipment. It argues the letters establish its final lease payment would fully satisfy the lease and terminate all obligations. Because Yellow Dog timely made that payment, it contends Ascentium "fail[ed] to keep the commitments it made . . . as specified in" the letters. Yellow Dog likewise claims testimony from an Alliance representative confirmed Ascentium had acquired Alliance's rights under the lease in 2014, which contradicted Ascentium's denials of ownership.

Yellow Dog's argument rests largely on evidence the trial court reasonably rejected. Although it points to the letters and testimony as proof of ownership transfer, substantial evidence supports the court's contrary findings. As the court noted, specific provisions in the lease and assignment preserved Alliance's residual interest in the equipment, and no waiver of that right was shown. Yellow Dog's offer to return the equipment and Alliance's assertion of a remaining balance due further support the conclusion that ownership did not transfer. We affirm the court's resolution of conflicting evidence and its interpretation of the governing agreements.

12

## DISPOSITION

The judgment is affirmed. Cross-defendants shall recover their costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.