Filed 8/4/21; Modified and certified for pub. 8/31/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EVERETT EARLE PEARCE, JR., as Trustee, etc. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CHARLES BRIGGS, JR., Individually and as Trustee, etc. et al., <br><br> Objectors and Respondents. | F080403 <br><br> (Super. Ct. No. S1501PB60869) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Andrew B. Kendall, Commissioner.

Darling & Wilson, Joshua G. Wilson, Anton H. Labrentz, and Nathaniel J. Oleson, for Plaintiffs and Appellants.

LeBeau-Thelen and Andrew K. Sheffield, for Objectors and Respondents.

-ooOoo-

This is a probate matter involving two groups of rival claimants regarding two parcels of real property in Bakersfield. Each group of claimants filed a petition to establish their claims on the properties, and opposed the petition filed by the other group. Both petitions were tried concurrently in a bench trial, resulting in a ruling and judgment in favor of one group of claimants as to both properties. We affirm the trial court's ruling and judgment.

## PROCEDURAL BACKGROUND

The underlying judgment encompasses two probate petitions. The first petition was filed on April 26, 2011, by the appellants in this matter, Everett Earle Pearce, Jr., and Flora Geraldene Crawford (collectively, Pearce Parties), and was entitled "Petition to Determine Title to Property and Compel its Return and Transfer to Court Appointed Personal Representative of Ruth L. Briggs; Double Damages Under Probate Code § 859." The Pearce Parties supplemented the petition on July 25, 2011 and September 14, 2011. The probate court granted a motion for judgment on the pleadings filed by the parties objecting to the petition (see below). The Pearce Parties thereafter filed, on August 26, 2014, the operative "Amended Petition to Determine Title to Property and Compel its Return and Transfer to a Court Appointed Personal Representative of Ruth L. Briggs; Double Damages Under Probate Code § 859" (Pearce Petition). The Pearce Petition involved two parcels of real property in Bakersfield referred to in the proceedings below as the "Gibson property"[1] and the "Rosedale property."[2] The Pearce Petition sought confirmation of title in both the Gibson and Rosedale properties on behalf of the Estate of Ruth L. Briggs, in which estate the Pearce Parties had an interest.

---

[1] The Gibson property was a single parcel located at 2620, 2630, 2720, 2730, 2740, 2740B and 2750 Gibson Street, Bakersfield.

[2] The Rosedale property was located at 3940 Rosedale Highway, Bakersfield.

2.

The parties objecting to the Pearce Petition were Charles J. Briggs, Jr., and Margaret Briggs Arroyo, individually and in their capacities as trustees of the Charles John Briggs Individual Living Trust Dated December 13, 1995, and Teresa Briggs Schwerdt. On November 30, 2015, Charles J. Briggs, Jr., and Margaret Briggs Arroyo (collectively, Briggs Parties), in their capacities as trustees of the Charles John Briggs Individual Living Trust Dated December 13, 1995, filed a petition entitled "Petition to Establish the Charles John Briggs Individual Living Trust Dated December 13, 1995's Claim of Ownership" (Briggs Petition). The Briggs Petition sought to quiet title to the Gibson and Rosedale properties in the name of the Charles John Briggs Individual Living Trust Dated December 13, 1995. The Pearce Parties objected to the Briggs Petition.

The Pearce Petition and Briggs Petition were tried concurrently in a bench trial. The evidentiary phase of the trial occurred over four afternoons in February 2019 (February 19, 20, 21, and 28, 2019). The Pearce Parties presented their case first, calling as witnesses, Everett Earle Pearce, Jr., and Flora Geraldene Crawford. Thereafter, the Briggs Parties called their witnesses, namely, Melissa Briggs (wife of Charles J. Briggs, Jr.), and Margaret Briggs Arroyo. The Pearce Parties then recalled Everett Earle Pearce, Jr., and, thereafter, the Briggs Parties recalled Margaret Briggs Arroyo. Following the evidentiary phase of the trial, the parties submitted closing briefs. Subsequently, on May 15, 2019, the trial court heard oral closing arguments.

On July 29, 2019, the trial court issued a "Ruling on Court Trial." The trial court denied the Pearce Petition and granted the Briggs Petition. The Pearce Parties requested a statement of decision. On November 4, 2019, the trial court issued a "Final Amended Statement of Decision" (statement of decision) regarding the Pearce and Briggs Petitions. On the same date, the court entered a "Judgment After Trial," denying the Pearce Petition and granting the Briggs Petition. The Pearce Parties subsequently filed the instant appeal challenging the court's denial of the Pearce Petition.

3.

The trial court, based on the evidence presented at trial, made relevant findings of fact as reflected in its statement of decision. These findings of fact are related, essentially verbatim, in the parties' briefs, as the (undisputed) facts underpinning the claims at issue on appeal. We will therefore delineate below the trial court's findings of fact as reflected in its statement of decision.

Ruth Briggs (Ruth) married Charles John Briggs, Sr., on February 2, 1949 (Charles John Briggs, Sr., was known as Jack; he was referred to as Jack in the proceedings below, and we will refer to him interchangeably as Jack or Charles John Briggs, hereafter).

At the time of the marriage, Ruth already had two biological children, Everett Earle Pearce, Jr. (Earle) and Flora Geraldene Crawford (Geri). After they married, Ruth and Jack adopted three children: Margaret Briggs (Margaret or Margaret Briggs Arroyo), Charles John Briggs, Jr. (John), and Teresa Briggs (Teresa or Teresa Briggs Schwerdt).

On August 12, 1955, Briggs Oil Co., a 50-50 general partnership between Jack and his brother, Tom Briggs, bought the property located at 3940 Rosedale Highway, Bakersfield (the Rosedale property). (The question of whether the partnership itself was formed before or after the marriage of Ruth and Jack was not resolved at trial.)

On October 30, 1959, Ruth and Jack bought the Gibson property and took title as joint tenants. On May 6, 1980, Ruth and Jack conveyed an undivided 12.5 percent interest in the Gibson property to Jack's sister, Marie Schweifler, leaving Ruth and Jack with an 87.5 percent interest held in joint tenancy.

On September 8, 1983, Ruth executed a will (Ruth's will or Ruth's 1983 will) prepared by attorney Thomas Underhill. Ruth's will created an "A" trust and a "B" trust and ultimately provided for equal distribution of her estate to each of her five children after the death of Jack. Ruth's will included a provision stating that all property owned

4.

by Jack and her, including property to which they held title in joint tenancy, was intended to be their community property, and that her community property share was to be distributed according to the provisions in her will. Jack was named as executor of Ruth's estate in Ruth's will.

On April 1, 1988, Ruth died. Thereafter, Underhill told Jack that he should probate Ruth's will, but Jack refused. On November 15, 1988, Jack executed a will prepared by Underhill. The will left Jack's estate to the five children in equal shares. A copy of this will was provided to Geri (one of the Pearce Parties) in 1988. Jack also executed an affidavit of death of joint tenant concerning the Gibson property and recorded it on January 30, 1989, against the advice of Underhill, who was of the view that doing so would violate Ruth's will.

On February 7, 1989, Jack and his brother, Tom, dissolved Briggs Oil Co. and each partner received a 50 percent interest as tenants in common in the Rosedale property by recorded deed.

On December 13, 1995, Jack created the Charles John Briggs Individual Living Trust (Jack's 1995 trust). Jack named himself as trustee and Margaret and John as successor trustees. Under the trust, Margaret, John, and Teresa were each one-third equal residual beneficiaries; Earle and Geri were not beneficiaries of the trust. In 1995, Jack also revoked his prior wills and executed a pour over will leaving any residual estate assets to his trust.

On January 9, 1996, Jack recorded deeds with Kern County conveying his 50 percent interest in the Rosedale property and his interest in the Gibson property to his 1995 trust. (Jack had signed, on December 13, 1995, the deeds transferring to the trust his interest in the Rosedale property and the Gibson property.) Since the transfer, Jack, and/or Jack's trust, maintained possession of the properties and paid all the property taxes thereon.

5.

On April 27, 2010, Jack died. On April 26, 2011, the Pearce Parties filed their original petition to determine title to the Gibson and Rosedale properties and compel their return to Ruth's estate. The Pearce parties filed an amended petition (the instant Pearce Petition) on August 26, 2014. In the Pearce Petition, the Pearce Parties admitted they were aware of Jack's 1988 will, his failure to establish the "A" trust and the "B" trust under Ruth's 1983 will, and his failure to probate Ruth's will, but claimed they had no knowledge of Jack's 1995 trust or 1995 will that eliminated them as beneficiaries of Jack's estate. Stipulated facts admitted in this matter also established that Ruth Briggs or the Pearce Parties were never in possession of the Gibson or Rosedale properties and further that they never paid the taxes on the Gibson or Rosedale properties.

Based on its findings of fact, the trial court ruled that the Pearce Parties failed to establish that Ruth's estate held a property interest in either the Gibson property or the Rosedale property and that the claims set forth in the Pearce Petition were time barred. The trial court also found that the Briggs Parties established legal title to both the Gibson and Rosedale properties and that the Pearce Parties failed to rebut the legal presumptions flowing from legal title.

## DISCUSSION

The trial court denied the Pearce Petition on multiple grounds, including:

1. Ruth's will did not sever the joint tenancy held by Ruth and Jack in the Gibson property;

2. Ruth's estate did not have an interest in the Rosedale property;

3. The claims relating to Ruth's interest in the Briggs Oil Co. partnership were barred by the statute of limitations in Code of Civil Procedure section 338;[3] and

---

**3** All undesignated statutory references are to the Code of Civil Procedure.

4.      All claims seeking to recover interests in the Gibson and Rosedale properties were barred by the statutes of limitation in sections 318 and 319.

" 'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of review to the trial court's findings of fact.' " (*Veiseh v. Stapp* (2019) 35 Cal.App.5th 1099, 1104, quoting *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Resolution of a statute of limitations issue is normally a question of fact.  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)  "The trial court's finding on the accrual of a cause of action for statute of limitations is upheld on appeal if supported by substantial evidence." (*Institoris v. City of Los Angeles* (1989) 210 Cal.App.3d 10, 17.)

We affirm the trial court's rulings and the judgment rendered in the trial court.

## I.      Ruth's Estate is not Vested with a 43.75 Percent Interest in the Gibson Property

The trial court addressed the question whether Ruth's estate retained a property interest in the Gibson property.  The Pearce Parties contended that Ruth's 1983 will had severed the joint tenancy between Ruth and Jack as to the Gibson property, rendering Ruth and Jack tenants in common as to this property.

The trial court ruled:  "As to the Gibson property, the court finds that Ruth's Will did not sever the joint tenancy in the property.  The court also finds no substantial evidence to support [a conclusion] that Jack and Ruth agreed to hold the property as community property."

On appeal, the Pearce Parties resurrect their contentions to the effect that Ruth's estate is vested with a 43.75 percent interest in the Gibson property because "Ruth severed the joint tenancy with Jack in her 1983 will leaving her an undivided 43.75

7.

percent tenant in common with Jack."[4]  The Pearce Parties note:  "The severance of a joint tenancy converts the form of co-ownership to a tenancy in common allowing Ruth to dispose of her half by will.  (*Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 631.)" The Pearce Parties further argue:  "Jack's subsequent recording of an affidavit of death of a joint tenant and his later conveyances failed to transfer Ruth's interest that he did not own … and Ruth's estate remains the vested owner of an undivided 43.75 percent interest in the Gibson property."  The Pearce Parties urge:  "The trial court's conclusion to the contrary is error and must be reversed."  We affirm the trial court's determination.

### A.   *Factual Background*

Here, the parties agree that Ruth and Jack acquired the Gibson property as joint tenants on October 30, 1959.  The distinctive aspect of joint tenancy is the right of the surviving joint tenant to succeed to the interest of the deceased tenant.  (*Estate of Gebert* (1979) 95 Cal.App.3d 370, 376; *Zanelli v. McGrath*, *supra*, 166 Cal.App.4th at p. 630 ["The right of survivorship is the distinguishing feature of a joint tenancy."].)  The deceased joint tenant's interest in the property held in joint tenancy vests automatically in the surviving joint tenant by operation of law.  (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317; *Zanelli v. McGrath*, *supra*, at p. 630.)  "Nothing 'passes' from the deceased joint tenant to the survivor; rather, the survivor takes from the instrument by which the joint tenancy was created."  (*Grothe v. Cortlandt Corp.*, *supra*, at p. 1317.)

The fact that Ruth and Jack held title to the Gibson property as joint tenants was established by a written instrument in the form of a grant deed that was admitted as an exhibit at trial.  (Ex. 14.)  (As noted above, the couple deeded away 12.5 percent of their interest on May 6, 1980, leaving them with an 87.5 percent interest in the property, held

---

**4**    Ruth and Jack acquired the Gibson property as joint tenants on October 30, 1959. The couple deeded away 12.5 percent of their interest on May 6, 1980, leaving them with an 87.5 percent interest in the property.

in joint tenancy.) (Ex. 15.) Jack held title to the Gibson property under the joint tenancy deed from 1959 until he transferred it to his living trust in 1995. (Ex. 24.) After Ruth died, Jack claimed title as the surviving joint tenant in 1989, by filing an affidavit of death of joint tenant that dropped Ruth from the title.[5] (Ex. 19.)

Turning to Ruth's 1983 will, the parties agree the will was never probated and its legality as a will was therefore never established. (See *In re Estate of Burnett* (1935) 6 Cal.App.2d 116, 123 ["a probate court ha[s] no power to consider the legality of a will until it was regularly brought before it by a petition for its probate"], accord *Estate of Olson* (1962) 200 Cal.App.2d 234, 237; *Bohn v. Smith* (1967) 252 Cal.App.2d 678, 682 [the validity of a will may be determined only in the manner provided by the Probate Code].) The trial court admitted Ruth's 1983 will into evidence over the objection, on grounds the will was never admitted to probate, of the Briggs Parties. (Ex. 11; see *Adams v. Lansing* (1861) 17 Cal. 629, 641.)

Ruth's 1983 will, provided, in Article THIRD:

> "I declare that for convenience or through inadvertence title to some property owned by myself and my husband may be held of record in the form of joint tenancy, but that all such property is in fact intended to be our community property. I hereby confirm unto my husband his one half interest in our community property. It is my intention to dispose of all my property of any nature, tangible or intangible, real or personal, and wheresoever situate, of which I have the power to make a testamentary disposition."

Ruth's will then specified that Ruth's assets were to be held in trust for the benefit of Jack and, upon his death, for the benefit of her children, until, 10 years after the death of Jack, the assets were to be distributed in equal shares to her five children.

---

[5] In filing an affidavit of death of a joint tenant with respect to the Gibson property, Jack placed in the real property record the fact of Ruth's death and thereby satisfied a condition subsequent in the relevant instrument, the joint tenancy deed, under which the joint tenants had acquired their interest. (Prob. Code, §§ 210, 212.)

During the trial in this matter, portions of the deposition transcript of Thomas Underhill, the attorney who prepared Ruth's will, were read into the record by counsel for the Pearce Parties; the deposition occurred on July 13, 2012. (Ex. 40.) In his deposition, Underhill stated that he was of the "opinion" that Ruth's will had severed the joint tenancy in the Gibson property.[6] Underhill, however, did not explicitly clarify when the severance would have occurred: at the time of execution of the will or upon Ruth's death. Underhill also stated in his deposition that he had prepared wills for Ruth and Jack in 1983 and another will for Jack on November 15, 1988 (after Ruth's death); however, no 1983 will for Jack was in evidence.

## B. The Trial Court's Ruling

Regarding the Gibson property, the trial court ruled, as reflected in its statement of decision: "As to the Gibson property, the court finds that Ruth's Will did not sever the joint tenancy in the property. The court also finds no substantial evidence to support [a conclusion] that Jack and Ruth agreed to hold the property as community property."

The court explained its ruling:

> "The Pearce parties urged this court not to think of Ruth's Will merely as a will, but rather as both a will and a separate severance of the joint tenancy. However, there is an inconsistency in Pearce's argument. On the one hand, if the court does not treat it as a will, then the severance occurred immediately upon execution of the document. That position is not legally tenable, because if the conversion from joint tenancy to tenants in common occurred immediately upon execution, then the executed document was irrevocable. But the document is also a will. Wills may be revoked at any time simply by drafting a new will. (See Prob. Code, § 6120.) Nothing in Ruth's Will contains language stating the purported severance is irrevocable. On the other hand, if the severance occurred upon

---

[6] Underhill was sued, for malpractice, by the Pearce Parties, in the instant action; the claims against Underhill were transferred from the superior court's probate department to the civil department. Underhill and the Pearce parties reached a settlement to resolve the claims against Underhill, before the instant trial occurred. Geri testified at trial that Underhill paid a sum of money to Earle and Geri as part of the settlement.

Ruth's death, then the court must treat the document as a will. But, as of the time of Ruth's death in 1988, the law provided that an unrecorded will could not serve as a severance of a joint tenancy. (See *Estate of England* (1991) 233 Cal.App.3d 1; Civ. Code, § 683.2(c).)

"There is a rebuttable presumption that upon the death of a spouse, the character of real property owned by the couple is as set forth in the deed. (*Estate of Levine* (1981) 125 Cal.App.3d 701, 705; Evid. Code, § 662.) To rebut the presumption, the opposing party must show that the character of the property was held differently, including by establishing that the property's character was changed by an agreement or mutual understanding between the spouses. (*Socol v. King* (1950) 36 Cal.2d 342, 345-347; *Estate of Gallio* (1995) 33 Cal.App.4th 592, 596.) 'However, there *must* be an agreement of some sort; the presumption may *not* be overcome by testimony about the hidden intention of one spouse, undisclosed to the other spouse at the time of the conveyance.' (*Levine*, *supra*, at p. 705, emphasis in original; see also *Edwards v. Deitrich* (1953) 118 Cal.App.2d 254, 260-262 [[fact] that one party expresses intent in will to convert character of property does not rebut presumption raised by form of deed].)

"Here, there was insufficient evidence that at the time they acquired the Gibson property, Jack and Ruth mutually agreed to hold the property as community property, or that Jack consented to transmute the Gibson property from joint tenancy to community property."

### C.     *Analysis of Claims Regarding Gibson Property*

#### 1.     **Ruth's Will Did Not Sever the Joint Tenancy in the Gibson Property Under Civil Code Section 683.2, Subdivision (a)(2)**

The Pearce Parties challenge the trial court's ruling as to the Gibson property in only one respect. They argue that Ruth's 1983 will, severed the joint tenancy in the Gibson property as of the time of execution of the will in 1983. They argue that a will can have a dual character in that it "may be a will and something else at the same time." They further argue that Ruth's will must be interpreted such that it severed the joint tenancy in the Gibson property "immediate[ly] upon execution of the instrument in order to permit the will to dispose of Ruth's property under the will." They point out that "[a] testator has no power to dispose of joint tenancy property by a will." (See *Estate of*

11.

*England* (1991) 233 Cal.App.3d 1, 4 [an interest in a joint tenancy cannot be devised by will]; *Guardianship of Wood* (1961) 193 Cal.App.2d 260, 267 ["property held in joint tenancy is not subject to administration in the decedent's estate"]; Prob. Code, § 21105 [a will passes all property owned by the testator at death]; Prob. Code, § 6600, subd. (b)(1).)

The Pearce Parties' argument has a surface appeal, but it does not withstand scrutiny. The operative language in Ruth's will is as follows: "I declare that for convenience or through inadvertence title to some property owned by myself and my husband may be held of record in the form of joint tenancy, but that all such property is in fact intended to be our community property." This language does not reflect a clear and unequivocal intent, on Ruth's part, to sever the joint tenancy in the Gibson property at the time of execution of the will. In this context we note, without suggesting that any one or all of these factors are necessarily dispositive, that the language at issue is nonspecific, it does not refer to any particular property, and it does not clearly provide that Ruth intended a unilateral severance of joint tenancy in co-owned properties to be irrevocable during her lifetime and to take immediate effect.

The Pearce Parties' argument that Ruth's will severed the joint tenancy in the property relies upon factually distinguishable cases holding that a will may be dual in character. (See, e.g., *In Re: Estate of Watkins* (1940) 16 Cal.2d 793, 797 [a single written instrument, i.e., the joint and mutual will of a couple, constituted both a will *and a contract*, and the contract amounted to an agreement that certain properties they held in joint tenancy would be transmuted to community property]; *Van Houten v. Whitaker* (1959) 169 Cal.App.2d 510, 515-518 [joint will of two spouses was contractual in nature and hence constituted an agreement, as to property they held in joint tenancy, to sever the joint tenancy and transmute the property into community property].) While the Pearce Parties are correct in asserting that a part of a "will"—for example a contract appended in a will—can be effective immediately upon execution, the cited cases are clearly

distinguishable because they deal with joint wills that are contractual in nature. In other words, the wills at issue in these cases contained contracts that, as such, reflected an unequivocal intent, on the part of the joint tenants, to sever their joint tenancy in certain property and transmute it to community property upon execution of the contract.

*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1441-1443, another case cited by the Pearce Parties, is similarly distinguishable as it involved a trust agreement signed by both joint tenants, which agreement reflected a clear intent to sever joint tenancy in a property when the property was conveyed to the trust and made subject to the trust's terms. Finally, the Pearce Parties rely on *Adams v. Lansing*, *supra*, 17 Cal. at pages 636-637, another case that is factually distinguishable. *Adams v. Lansing* involved an instrument styled as a will, under which a father devised various types of property to his children, and also referenced ranch lands he had previously gifted to his sons. The dispute at issue in the case pertained to the title to the ranch lands previously gifted to the sons. *Adams v. Lansing* held that "[t]he same instrument may operate both as a conveyance and as a will or devise, in regard to different pieces of property." (*Id*. at p. 640.) As to the ranch lands, title to which was disputed, *Adams v. Lansing* concluded: "The language used [in the instrument] was equivalent to saying, I have [previously] given these lands in certain proportions to my sons, and I hereby confirm and ratify the gift. There is no doubt that this was sufficient to pass the title, and it is clear that a testamentary disposition was not contemplated [as to these lands]. The intention was to vest the title immediately in the sons [as the lands had already been gifted to them], and it is of no consequence that the instrument professes on its face to be a will. The same instrument may operate both as a conveyance and as a will or devise, in regard to different pieces of property." (*Id*. at p. 640.) While we recognize *Adams v. Lansing* stands for the general principle that the same instrument may serve to effectuate multiple purposes, the factual context of that case, in which the disputed lands had already been

13.

gifted prior to the execution of the instrument, bears no relation to the factual context of the present matter, to which we now turn.

A will that unilaterally purports to sever a joint tenancy encompasses the potential for fraud or duplicity, which is the precise concern that arises here. (See, e.g., *Estate of England*, *supra*, 233 Cal.App.3d at p. 6.) The operative language in Ruth's will appears to be mere boilerplate designed to protect her whether she predeceased Jack or whether Jack predeceased her. The vagueness of the language, and the fact that it was included in a will (or an ostensible will), appears designed to ensure that, were Jack to predecease Ruth, Ruth would *not be precluded*, upon filing an affidavit of death of joint tenant, from gaining title to any property jointly held by Ruth and Jack under a joint tenancy deed. Indeed, in a circumstance where Jack were poised to predecease Ruth, Ruth would unreservedly be entitled to draft a new will and to thereby revoke her 1983 will and the purported severance of joint tenancy in relation to unnamed properties jointly owned by her and Jack. (See Prob. Code, § 6120; *Cook v. Cook* (1941) 17 Cal.2d 639, 646 ["A will does not become operative until death; prior to death it is revocable at the whim of the testator, and the objects of the testator's bounty have no vested rights."].) Accordingly, like the trial court, we conclude, based on the operative language in Ruth's 1983 will and its inclusion in a will or an ostensible will, that the instrument did not reflect an unequivocal intent to irrevocably sever the joint tenancy in the Gibson property upon its execution, and, in turn, did not effectuate an immediate severance.

The Pearce Parties point to Civil Code section 683.2, subdivision (a)(2), which authorizes a joint tenant to unilaterally sever a joint tenancy by executing a written instrument evidencing such intent. Civil Code section 683.2 provides in relevant part:

> "(a) Subject to the limitations and requirements of this section, in addition to any other means by which a joint tenancy may be severed, a joint tenant may sever a joint tenancy in real property as to the other joint tenant's

interest without the joinder or consent of the other joint tenants by any of the following means:

[¶] … [¶]

"(2) Execution of a written instrument that evidences the intent to sever the joint tenancy, including a deed that names the joint tenant as transferee, or of a written declaration that, as to the interest of the joint tenant, the joint tenancy is severed."

In 1985, the Legislature amended Civil Code section 683.2 to impose an additional requirement, i.e., recordation, for written instruments executed to sever joint tenancies. Specifically, the Legislature added Civil Code section 683.2, subdivision (c), which provides, in relevant part:

"(c) Severance of a joint tenancy of record by deed, written declaration, or other written instrument pursuant to subdivision (a) is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied:

"(1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located.

"(2) The deed, written declaration, or other instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant."

However, Civil Code section 683.2 subdivision (e) provides that subdivision (c) does "not apply to or affect a severance made before January 1, 1986, of a joint tenancy."

It is undisputed that Ruth's will was not recorded with the County of Kern. The Pearce Parties contend that, to the extent Ruth's will severed the joint tenancy in the Gibson property when it was executed in 1983, it was not subject to the recordation requirement of Civil Code section 683.2, subdivision (c), as the latter statute applies only to severances made after January 1, 1986. (See Civ. Code, § 683.2, subd. (e).) This

15.

argument is, however, moot, in light of our conclusion, above, that Ruth's will did not reflect an unequivocal intent to sever the joint tenancy in the Gibson property as of the time of execution of the will in 1983 and, in turn, did not sever the joint tenancy at that point. (See Civ. Code, § 683.2, subd. (a)(2).)

By the time Ruth died in 1988, the requirements of Civil Code section 683.2, subdivision (c) were in effect. Thus, to the extent Ruth's will severed the joint tenancy in the Gibson property upon her death in 1988, the severance was ineffective because the will was never recorded with the County of Kern, as required for purposes of severing a joint tenancy under Civil Code section 683.2, subdivision (c), at the time. (*Cook v. Cook*, *supra*, 17 Cal.2d at p. 646 [a will does not become operative until death].)

While we recognize that a testator cannot, by will, dispose of property the testator holds in joint tenancy, this fact does not persuade us, in this instance, that the operative language in Ruth's will reflected an unequivocal intent to effectuate—and thereby constituted—an immediate and irrevocable severance of the joint tenancy in the Gibson property. As for the post hoc deposition statements of Ruth's attorney, Thomas Underhill, they are mere legal conclusions. Here, the operative language is contained in a revocable instrument and the operative language itself is nonspecific and open-ended as to when it was intended to take effect; furthermore, there is a lack of other indicia—such as evidence of notice to Jack—to suggest the operative language was intended to constitute an immediate and irrevocable severance of the joint tenancy in the Gibson property. Accordingly, we affirm the trial court's determination that the Pearce Parties' contention that "the severance occurred immediately upon execution of the document" is not "tenable" on the instant record.

16.

### 2. Nor was the Joint Tenancy in the Gibson Property Severed by "Other Means," Unrelated to Ruth's Will, Under Civil Code section 683.2, subdivision (a)[7]

The joint tenancy in the Gibson property was established by a written instrument in the form of the grant deed under which Ruth and Jack took title to the property (the deed was admitted into evidence at trial). (Ex. 14.) *Estate of England*, *supra*, 233 Cal.App.3d at page 5 explains: "When determining the nature of real property upon the death of one spouse, there is a rebuttable presumption 'that the property is as described in the deed and the burden is on the other party who seeks to rebut the presumption.' " *Estate of England* further clarifies: " 'The mere fact one of the parties has a mistaken belief about the nature of the property, or has an intent *uncommunicated to the other spouse* about converting the property from one form to another, or expresses such an intent by will, will not rebut the presumption raised by the form of the deed.' " (*Ibid.*, italics added.) Here, a presumption exists, in light of the joint tenancy deed of the Gibson property, that the property was held in joint tenancy by Ruth and Jack.

The trial court determined: "Here, there was insufficient evidence that at the time they acquired the Gibson property, Jack and Ruth mutually agreed to hold the property as community property, or that Jack consented to transmute the Gibson property from joint tenancy to community property." We agree with the trial court. There was no evidence of an agreement between Ruth and Jack to sever the joint tenancy and transmute their interest in the property to community property; thus, the presumption established by the

---

**7** Civil Code section 683.2, subdivision (a) provides: "Subject to the limitations and requirements of this section, *in addition to any other means by which a joint tenancy may be severed*, a joint tenant may sever a joint tenancy in real property as to the other joint tenant's interest without the joinder or consent of the other joint tenants by … [¶] (2) [e]xecution of a written instrument that evidences the intent to sever the joint tenancy." (Italics added.)

joint tenancy deed has not been rebutted. (*Socol v. King* (1950) 36 Cal.2d 342, 345-347 ["property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties"]; see *In re Brace* (2020) 9 Cal.5th 903, 938 [presumption flowing from "titling of [a] deed" as joint tenancy is applicable to properties acquired before 1985].) Nor did Ruth's will serve to rebut the presumption of joint tenancy established by the joint tenancy deed. (See *Edwards v. Deitrich* (1953) 118 Cal.App.2d 254, 260-262 [fact that one party expresses intent in will to convert or transmute character of property does not rebut presumption raised by form of deed].)

Finally, as the trial court noted, Evidence Code section 662 and Code of Civil Procedure section 321 are also applicable here. The trial court determined: "The uncontested evidence showed that the Charles J. Briggs Individual Living Trust has held actual legal title to [the Gibson property] since Jack signed the [deed transferring the property to his trust] on December 13, 1995 and recorded [it] on January 9, 1996 [Ex. 24]." The court further noted: "There is a presumption that the person with legal title also has possession of the property and is the beneficial owner. (Code Civ. Proc., § 321; Evid. Code, § 662; *Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 953.)" Finally, the court noted: "The presumption may only by overcome by clear and convincing evidence that the objecting party has superior title or has obtained title by adverse possession. (*Tobin*, *supra*, at p. 953; *Schoenfeld v. Pritzker* (1967) 257 Cal.App.2d 117, 122; Code Civ. Proc., § 325.)" The trial court concluded that the Pearce Parties had not rebutted the presumptions established by Evidence Code section 662 and Code of Civil Procedure section 321.

On this point too, we agree with the trial court. Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

(See *In re Brace*, *supra*, 9 Cal.5th at p. 938 [form of title presumption in Evid. Code, § 662 applies to property acquired during marriage, before 1975].)  Section 321 provides: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five years before commencement of the action."

As noted above, Ruth and Jack acquired the Gibson property in 1959 and initially held title in joint tenancy under the joint tenancy deed.  Because the Gibson property was held in joint tenancy, when Ruth died, the property was not subject to administration in Ruth's estate.  (*Guardianship of Wood*, *supra*, 193 Cal.App.2d at p. 267; *Estate of England*, *supra*, 233 Cal.App.3d at p. 4 [an interest in a joint tenancy cannot be devised by will]; Prob. Code, § 6600, subd. (b)(1).)  After Ruth's death, Jack recorded, in 1989, an affidavit of death of a joint tenant, whereby Ruth was dropped from the title.  In 1995, Jack transferred the title to his living trust by means of a grant deed.  (Ex. 24.)  Jack therefore held title to the Gibson property solely in his name from 1989, when he filed the affidavit of death of joint tenant, until 1995, when he transferred it to his living trust. Thereafter, title was held by his living trust.

Under Evidence Code section 662, a presumption exists that Jack, and thereafter his trust, as the owners of legal title to the Gibson property, were also the owners of the full beneficial title to the property.  The Pearce Parties do not claim, nor is there any evidence, that they held the property by adverse possession.  The Pearce Parties also did not adduce any evidence, other than Ruth's 1983 will, to overcome the presumption.  The Pearce Parties have therefore failed to rebut the presumption established by Evidence

19.

Code section 662 that, as the holders of legal title to the Gibson property, Jack, and thereafter his trust, were also owners of the full beneficial title to the property.

## II. Ruth's Estate is Not Vested With an Undivided 25 Percent Interest in the Rosedale Property

The Pearce Parties contend that Ruth's estate is vested with a 25 percent interest in the Rosedale property as a tenant in common with Jack's trust. The trial court ruled that Ruth's estate did not have a property interest in the Rosedale property. The Pearce Parties contend that the trial court's determination is erroneous. We reject the Pearce Parties' contentions regarding the Rosedale property and affirm the trial court's determination.

### A. *The Trial Court's Ruling*

Regarding the Pearce Parties' contentions concerning the Rosedale property, the trial court ruled:

> "As to the Rosedale property, the court finds Ruth's estate does not have a property interest in the property. It was undisputed that Briggs Oil Company bought and held title to the Rosedale property until 1989, after Ruth's death. (Ex. 13 [grant deed for Rosedale property; Pearce Petition, ¶¶ 9, 25].) The evidence regarding when Jack acquired his interest in Briggs Oil Company was conflicting. Earle testified that Jack acquired his interest in the company from his parents before he married Ruth. [Citations.] If so, Jack's partnership interest and his interest in the Rosedale property were his separate property. (Fam. Code, § 770(a); Cal. Const., Art. I, § 21.) There was no evidence that the Rosedale property was transmuted during the marriage. (Fam. Code, § 852.)

> "But, the recorded statement of partnership … showed that Jack and his brother Tom formed a general partnership, Briggs Oil Company, on September 1, 1952, after Jack married Ruth. (Ex. 12 [recorded statement of partnership].) It was Briggs Oil Company that bought the Rosedale property in 1955. (Ex. 13 [grant deed for Rosedale property].) Thus, it appears that Jack's interest in the partnership was presumptively community property. (Fam. Code, § 760.)

20.

"Nevertheless, while Ruth may have held a community property interest in the partnership, she held no interest in the partnership's property. (Corp. Code, §§ 16501-16503; *Kenworthy v. Hadden* (1978) 87 Cal.App.3d 696, 701.) Additionally, Ruth's interest in the partnership was personal property. (*Carmichael v. Carmichael* (1963) 216 Cal.App.2d 674, 682.) Any conversion of her personal property interest in the partnership occurred in 1989, when the partnership was dissolved. The statute of limitations for a claim of conversion is three years from the act of conversion. (Code Civ. Proc., § 338; *Rose v. Dunk-Harbison Co*. (1935) 7 Cal.App.2d 502, 506.) It expired long ago."

### B. Analysis of Claims Regarding Rosedale Property

The trial court made undisputed findings of facts concerning the Rosedale property, as detailed in the "Summary of Facts Established at Trial" in its statement of decision. (Unnecessary capitalization omitted.) The trial court found Ruth and Jack were married in 1949. The trial court also found: "On August 12, 1995, Briggs Oil Co., a 50-50 general partnership between Jack and his brother, Tom Briggs, bought the property located at 3940 Rosedale Highway, Bakersfield, California." The trial court further found: "On February 7, 1989, Jack and his brother, Tom, dissolved Briggs Oil Co. and each partner received a 50 percent interest as tenants in common in the Rosedale property by recorded deed."

A spouse's interest as a partner in a partnership is community property, to the extent community property was invested in the partnership. (*Kenworthy v. Hadden* (1978) 87 Cal.App.3d 696, 701.) However, "[p]artnership property is a distinct category of property" and the partnership's assets are not community property. (*Ibid*. [while a partner has a right to possess partnership assets, such right can be exercised only for partnership purposes; accordingly, partnership assets are not community property].) Here, Ruth had a community property interest in Jack's partnership interest but not in the partnership's assets, including specific parcels of real property owned by the partnership (i.e., the Rosedale property).

"A partner's interest in the partnership is that partner's share of the profits and surplus and is itself personal property." *(Kenworthy v. Hadden, supra*, 87 Cal.App.3d at p. 701; *Carmichael v. Carmichael, supra,* 216 Cal.App.2d at p. 682 ["A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."].) Ruth's community property interest in the Briggs Oil partnership was limited to Jack's partnership interest, and, as such, was an interest in personal property. (*Ibid*.)

When the partnership was dissolved in 1989, Ruth or her successors in interest were entitled to her proportionate share of the undistributed income and net value on liquidation of the partnership. However, as the evidence showed and the trial court determined, Jack held on to, and thereby converted, Ruth's share of these proceeds at the time of dissolution. To the extent Jack obtained title to an interest in the Rosedale property following dissolution, it was after Ruth's lifetime, and therefore Ruth did not acquire a community property interest in the Rosedale property.

The Pearce Parties, relying on *Kenworthy v. Hadden, supra*, 87 Cal.App.3d 696, 701, contend that since Ruth had a community property interest in Jack's interest in the partnership, she traded it for the same in the Rosedale property, when Jack acquired it upon dissolution of the partnership, after her death. But *Kenworthy v. Hadden* does not assist the Pearce Parties. *Kenworthy v. Hadden* simply explains that, where one spouse is a partner in a partnership, and community property funds are invested in the partnership, the other spouse has a community property interest in the partner spouse's interest in the partnership. (*Kenworthy v. Hadden, supra*, at pp. 700-701.) Thus, even assuming Ruth had a community property interest in Jack's partnership interest, it was an interest in personal property that Jack converted at the time of dissolution.

The trial court correctly noted, "[a]ny conversion of [Ruth's] personal property interest in the partnership occurred in 1989, when the partnership was dissolved." The

22.

court further noted, also correctly, that "[t]he statute of limitations for a claim of conversion is three years from the act of conversion." (See § 338, subd. (c)(1) ["an action for the specific recovery of personal property" must be brought within three years]; *Rose v. Dunk-Harbison Co.* (1935) 7 Cal.App.2d 502, 506 ["a cause of action for conversion of personal property arises immediately upon the commission of the acts of conversion"].)

The Pearce Parties initiated the instant action on April 26, 2011, more than 22 years after the act of conversion. Accordingly, their claims relating to Ruth's interest in Jack's partnership interest are barred by the three-year statute of limitations set forth in section 338, subdivision (c)(1). We affirm the trial court's ruling with respect to the Rosedale property.

## III. The Pearce Parties' Real Property Claims are Time-Barred

Since the trial court correctly concluded that Ruth was not a tenant in common of the Gibson and Rosedale properties, its further conclusion that the Pearce Parties' real property claims were time barred under sections 318, 319, and 321, was in turn correct. We affirm the trial court's conclusion that the Pearce Parties' real property claims regarding the Gibson and Rosedale properties were time barred.

### A. *Background*

Section 318 provides: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action."

Section 319 provides: "No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor

23.

of such person was seised or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made."

Section 321 provides: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action."[8]

The trial court found that the Pearce Parties' claims were time barred under sections 318 and 319. The court explained:

"Having concluded that Ruth was not a tenant in common of the Gibson or Rosedale properties, the court finds that the Pearce Parties' real property claims are time barred.… [I]n their closing briefs, the parties all agreed that Code of Civil Procedure sections 318 and 319 control this claim to recover real property.

"Code of Civil Procedure sections 318 and 319 provide that an action to recover real property, or the rents and profits derived from a real property, cannot be maintained unless the plaintiff was either 'seised or possessed' of the property within five years before commencement of the action. (*Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301 [merely paying taxes is insufficient to prove seisin].) 'Seised or possessed' means that the plaintiff held legal title, including through adverse possession, during the requisite period. (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 471 ["we conclude that the notices of default under void deed of trust provided notice of [a] cloud on plaintiffs' title, but did not dispute or disturb plaintiffs' possession of the property"].) In other words, an action to recover real property is time barred unless the plaintiff can show that he or

---

[8]    Section 321 is in sync with Evidence Code section 622, under which the owner of the legal title to property is presumed to be owner of the full beneficial title, which presumption may only be rebutted by clear and convincing proof.

24.

she held title to the property within five years before filing the action. (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084.)

"The Pearce Parties did not carry their burden of proving seisin or possession in the five-year period before they filed the original petition in April 2011. The uncontested evidence showed that the Charles J. Briggs Individual Living Trust has had actual legal title to both the Rosedale and Gibson properties since Jack signed the deeds on December 13, 1995 and recorded them on January 9, 1996 (admitted as Exs. 24 and 25). Prior to that, Jack personally held legal title to the Gibson and Rosedale properties from 1989 to 1995. (Admitted Exs. 19 and 20.) This again invokes the presumptions under Code of Civil Procedure section 321 and Evidence Code section 662. In addition to this evidence, the Pearce Parties admitted, by way of the stipulated facts and testimony, that they did not possess either property from 1988 until the date the Pearce Parties filed their original petition. (Stipulated Facts 12 and 13.)"

The Pearce Parties challenge the trial court's ruling. They claim that the applicable statutes of limitations, i.e., sections 318 and 319, were never implicated because Ruth and Jack were tenants in common of both properties and Ruth's seisin was therefore presumed. This claim has no merit as we have affirmed the trial court's determination that Ruth (or Ruth's estate) and Jack (or Jack's trust) were not tenants in common of either property at any time. The Pearce Parties failed to establish that Ruth's estate or successors in interest held title to the Gibson or Rosedale properties. The Pearce Parties also conceded that as Ruth's successors in interest, they never possessed the Gibson or Rosedale properties at any time before filing their instant claims. Under sections 318 and 319, the Pearce Parties' real property claims are therefore time-barred.

## IV. Jack's 1995 Trust's Ownership of the Gibson and Rosedale Properties by Adverse Possession

The Briggs Parties raised an affirmative defense to the Pearce Parties' claims that Ruth's estate held interests in both the Gibson and Rosedale properties, to the effect that, at a minimum, Jack's 1995 trust owned the Gibson and Rosedale properties by adverse possession. The Briggs Parties made the same claim in the Briggs Petition. The trial

court properly rejected the Pearce Parties' claim that Ruth was a tenant in common with Jack, as to the Gibson property. The trial court also properly rejected the Pearce Parties' claim that Ruth had a community property interest in the Rosedale property. In short, the trial court correctly concluded that Jack's 1995 trust was the proper record owner of the relevant interests in the Gibson and Rosedale properties. In light of the trial court's conclusion, there was no need for the Briggs Parties to prove the trust owned these properties by adverse possession.

## V.    Other Issues

We affirm the trial court's determination that Jack's 1995 trust was the proper record owner of both the Gibson and Rosedale properties. In light of our affirmance of the trial court's rulings with regard to both the Gibson and Rosedale properties, the remaining contentions raised by the Pearce Parties fail and we need not address them. The Briggs Parties did not cross appeal but nonetheless raised claims of their own in connection with the Pearce Parties' appeal. The Briggs Parties have raised those claims absent filing a notice of appeal and without providing authority demonstrating that they may properly do so. (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [as a general matter, "a respondent who has not appealed from the judgment may not urge error on appeal]; *Celia S. v. Hugo H*. (2016) 3 Cal.App.5th 655, 665 [as a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal]; *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 31.) Accordingly, we decline to reach the separate issues raised by the Briggs Parties.[9] In any event, since we have affirmed the underlying judgment, the issues raised by the Briggs Parties are moot.

---

[9]    The probate court granted a motion brought by Everett Earle Pearce, Jr., "to substitute Richard Crawford in place of petitioner, Flora Geraldene Crawford." (Unnecessary capitalization omitted.) The motion was heard by the court on June 13,

**DISPOSITION**

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

SMITH, J.

WE CONCUR:

DETJEN, Acting P.J.

MEEHAN, J.

---

2019.  The court granted the motion and ordered that "Richard Crawford, as the successor trustee of the Flora G. Crawford Trust … is substituted in place of petitioner Flora Geraldene Crawford for all purposes relative to this action."  The motion, any opposition, and reporter's transcript of the motion proceedings are not included in the record on appeal.  One of the issues raised by the Briggs Parties in connection with the Pearce Parties' appeal is that "Richard Crawford, trustee of the Flora G. Crawford Trust[,] has no standing to pursue this appeal."  (Unnecessary capitalization omitted.)  As noted, however, the record on appeal does not encompass transcripts and other records relevant to this issue.  Furthermore, the Briggs Parties' brief did not provide authority demonstrating that we could properly reach this issue.  While the Briggs Parties recited relevant authority for the first time at oral argument, the Pearce Parties did not have an opportunity to respond.  Given these circumstances, and the fact that we have resolved this appeal in favor of the Briggs Parties, we will not address this issue.

The other issue the Briggs Parties have raised in connection with the Pearce Parties' appeal is a challenge to the probate court's admission of Ruth's will into evidence at trial.  However, we decline to address this issue as the Briggs Parties have not provided any authority demonstrating they can properly raise this challenge without filing a notice of appeal.

27.

Filed 8/31/21

**<ins>CERTIFIED FOR PUBLICATION</ins>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EVERETT EARLE PEARCE, JR., as Trustee, etc., et al.,<br><br>      Plaintiffs and Appellants,<br><br>          v.<br><br>CHARLES BRIGGS, JR., Individually and as Trustee, etc., et al.,<br><br>      Objectors and Respondents. | F080403<br><br>(Super. Ct. No. S1501PB60869)<br><br>**ORDER MODIFYING OPINION, DENYING PETITION FOR REHEARING, AND GRANTING REQUEST FOR PUBLICATION**<br><br>**[No Change in Judgment]** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on August 4, 2021, be modified as follows:

On page 14, add the following footnote to the end of the first full paragraph. This modification requires the renumbering of all subsequent footnotes.

> To the extent the Pearce Parties suggest that Ruth's ostensible will should be interpreted according to the traditional tenets and statutory scheme applicable to the interpretation of wills, with a focus on giving effect to the intent of the testator, that argument is unavailing because, as noted above, a joint tenancy cannot be severed in a revocable instrument and, in turn, an interest in a joint tenancy cannot be devised by will. Applying the traditional rules of interpretation of wills to the language at issue would require construing this part of the document as a will (rather than as "something else" or as a will and "something else") and thereby as revocable, and would necessarily preclude a finding that the relevant

language severed the joint tenancy in the Gibson property. The Pearce Parties' argument is therefore self-defeating.

On page 21, the fourth sentence of the first paragraph under section *B. Analysis of Claims Regarding Rosedale Property*, which begins with "The trial court also found," the year 1995 should be replaced with 1955, so that the sentence reads as follows:

> The trial court also found: "On August 12, 1955, Briggs Oil Co., a 50-50 general partnership between Jack and his brother, Tom Briggs, bought the property located at 3940 Rosedale Highway, Bakersfield, California."

There is no change in the judgment. Except for the modifications set forth, the opinion previously filed remains unchanged.

As the nonpublished opinion filed on August 4, 2021, in this matter meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), respondents' request for publication is hereby granted and it is ordered that the opinion be certified for publication in the Official Reports.

In compliance with rule 8.1120(b) of the California Rules of Court, the Clerk/Executive Officer of this court shall transmit copies of the request for publication, the opinion, and this order to the Supreme Court.

Appellants' petition for rehearing filed on August 19, 2021, is hereby denied.

SMITH, J.

I CONCUR:

2.

MEEHAN, J.

I concur in the modification of the opinion and the denial of the petition for rehearing.  I would, however, deny the request for publication.

DETJEN, Acting P. J.

3.